## Case No. 8,180.

### LEE'S CASE.

[22 Leg. Int. 284;[1] 6 Phila. 96.]

Circuit Court, E. D. Pennsylvania. July 17, 1865.

HABEAS CORPUS—FLIGHT WHILE UPON BAIL—CONTEMPT—RIGHT THEREAFTER TO BE AGAIN LIBERATED—PARDON — NOMINAL PUNISHMENT THEREAFTER.

1. A person accused of a series of crimes, under each of two distinct heads, was, after a regular commitment, liberated upon a regular recognizance of bail, on the usual condition to appear in court to answer any charges, and not depart without leave. Under one of the heads of accusation, three bills of indictment were afterwards found for certain of the offences with which he was charged. He was tried, under one of these indictments, and convicted. Before sentence he absconded. Having been afterwards arrested and brought into court, he was under this conviction, sentenced to pay a fine and undergo a certain imprisonment. By a special pardon, this imprisonment was remitted, on condition that the fine should be paid. The pardon did not apply to the charges in the other two indictments for offenses under the same head of accusation as the offence of which he had been convicted, nor to any of the offences charged under the other head of accusation. The fine having been paid, and his imprisonment under the sentence having been terminated by the pardon, he was in custody under a recommitment to answer the other charges. Upon a subsequent application by him to be admitted to bail, his flight was considered such a wilful breach of the essential condition of his liberation upon bail that his privilege of such liberation had been forfeited.

2. This forfeiture of the privilege was independent of, or collateral to, the contempt of court which had been incidental to the wilful breach of the condition. Therefore, after the contempt was purged, or sufficiently punished, his detention in custody, without admission to bail, might be continued under the recommitment.

3. A renewal of the forfeited privilege of liberation upon bail was not demanded of right, and could not be reasonably asked of grace, nor allowed under an exercise of properly regulated ju-

---

[1] [Reprinted from 22 Leg. Int. 284, by permission.]

dicial discretion, because it was apparent, from his former flight, that, if again thus liberated, he might probably again abscond.

4. But, beyond the proper duration of imprisonment for the contempt, his detention without admission to bail should not be prolonged, except for the purpose of secure custody till trial or other lawful deliverance from commitment.

5. The forfeiture of the ordinary privilege of liberation upon bail involved no forfeiture of his ulterior privilege of deliverance—either by trial or otherwise—without unreasonable delay. If a new privilege of deliverance on bail arose from delay of trial, the only proper effect of the forfeiture of the original privilege would be upon the amount of bail requirable, and the number of sureties. And if he would otherwise, from unreasonable delay of trial, be entitled to an absolute discharge, the forfeiture of the original privilege might not prevent such discharge.

6. The charges against him under the same head as the offence of which he had been convicted were so complicated with it that all of them had necessarily been considered in determining the measure of the punishment in the sentence to which the pardon applied. The indirect effect of the pardon, therefore, was that, if he should be convicted afterwards of another offence under that head, his punishment would be but nominal. In determining the punishment imposed by that sentence, none of the charges against him under the other head of accusation had been thus considered. But under this other head no indictment had been found for any one of the offences charged; and from the past and inevitable future delay it was apparent that, if hereafter indicted for any of them, he would not be triable under such new indictment until after a longer imprisonment than would be allowed without admission to bail in a case originally not bailable. The circumstances were such that this would have been the case if he had not absconded. He was, therefore, admitted to bail, but in an increased amount, with an addition to the ordinary number of securities.

[Habeas corpus. On the part of Robert M. Lee.]

CADWALADER, District Judge. Persons accused of crime, who have been committed to official custody, are, in ordinary cases, entitled to immediate judicial liberation upon bail. In ordinary cases, and also in other cases, accused prisoners have the less immediate right of speedy trial according to the due course of procedure; and, if their trial is arbitrarily delayed, become entitled to liberation, as justice may require, either on bail or absolutely. A person committed for contempt has none of these privileges in respect of such commitment. His imprisonment in this respect is under an adjudication of contumacy. If the contumacy has occurred in the course of proceedings in which he is charged with crime, the proceeding as to the contempt is, nevertheless, considered as, in this respect, collateral to the proceedings under the original prosecution. The question of contempt, in the present case, will be considered hereafter. In the meantime the case will be considered as if it involved no question of contempt.

Under the laws of the United States, a prisoner accused of crime must be admitted to bail in all cases except where the punishment may be death, and in cases in which it may be death, judicial discretion is exercisable on the subject. This party has not been accused of any offence punishable with death. He was, therefore, when originally committed, entitled, of course, to liberation upon bail. He was admitted to bail accordingly upon the usual condition to appear in the district court to answer any charges, and not depart without leave.

The subjects of prosecution were two, similar in their general character, but entirely distinct as to the series of individual transactions involved in them respectively. One of these general subjects was an alleged enlistment, or spurious enlistment, of eighteen recruits, credited to a certain division of the Seventh Pennsylvania district. An incidental forgery of enlistment papers was alleged. The other general subject was an alleged similar transaction as to twenty-two recruits credited to one of the divisions of the Eleventh district. Here, also, a forgery of enlistment papers was alleged. Every one of the forty alleged enlistments in the two districts, had, or may have had, its own distinct papers; and everyone was apparently the subject of two distinct accusations of crime. One accusation was under acts of congress concerning forgery; the other, under the act against procuring or attempting to procure desertion. It would have been a censurable multiplication of prosecutions to have indicted him under these eighty charges. Three indictments were found by the grand jury at the last February sessions of the district court. These indictments applied severally to each of three of the alleged enlistments of recruits for the Seventh district. One indictment was for forgery of enlistment papers of one of these alleged recruits. The two other indictments were each for procuring the desertion of another alleged recruit for the same district. These three indictments were, in March last, each certified with the recognizance of bail, into the circuit court under the third section of the act of 1842 [5 Stat. 517]. Under that act the recognizance has, in the circuit court, the same effect as it would have had in the district court, if the cases had remained there. No indictment was either found or ignored by the grand jury as in any case of the alleged enlistment of recruits credited to the 11th district. It is therefore presumable that no such indictment was laid before the grand jury. The prosecution as to cases under this head remains, I believe, precisely as it stood when the accused was bound over to answer in the district court.

The certificate to the circuit court was thus exclusively of prosecutions relating to the alleged enlistments, or spurious enlistments, for the Seventh district. At the last April sessions of the circuit court the indictment for forgery was tried. According to the minutes of the court, the defendant was present during the trial, and, the jury hav-

ing retired to deliberate upon their verdict, were returning into court, when he disappeared. He was called, and, not answering, the default was recorded, and a bench warrant for his arrest was issued. The recognizance was also adjudged forfeited. By the verdict, which was then taken, he was convicted under this indictment. This was on the 7th of April. The other indictments have not been tried.

The bench warrant was not executed for more than seven weeks, during which time it is legally presumable that search for him was prosecuted with due official diligence. There was no voluntary return to custody; nor any surrender by bail or otherwise. He was at length, however, found, and taken into custody, where he remained until the 1st of this month. On that day he was brought into court; and under the indictment, which had been tried, was sentenced to pay a fine, and undergo an imprisonment in the penitentiary of the state. On the 10th instant the president, by a special exercise of the pardoning power, remitted the imprisonment on condition that the fine should be paid. This condition having been complied with on the 11th, the defendant was discharged from the penitentiary. There was, apparently, nothing in the pardon to effect the prosecution under the two untried indictments. The attorney of the United States, on the 11th, observing this, moved in the circuit court that the defendant be committed under those indictments. Upon this motion, before his removal from the penitentiary, such an order of commitment was made. He was received from the penitentiary into the custody of the marshal, whose duty it would have been to resume the custody of him if the last-mentioned order of the court had not been made. The marshal's custody, except as affected by this order of commitment, is now the same custody in which the defendant would have remained if he had never been in the penitentiary, but had been acquitted by the jury in the case in which he was convicted and afterwards pardoned. He would then have been detained for trial under the other two indictments. The marshal's custody, or his right of custody, continued during the imprisonment in the penitentiary, though his right of actual detention of the prisoner was qualified or suspended by the detention in the penitentiary. If these points were doubtful, the order of commitment of the 11th instant would make them quite immaterial. Whether this order was a recommitment, or a commitment, would be a trivial inquiry. It was, whichever phrase best applies to it, a "commitment," as distinguished from an "arrest." The commitment, moreover, was not such a one as may occur after hearing under an arrest, but such as may occur in ulterior stages of criminal procedure. The party committed was already subject to the police of the court, and, as the record proves,

had broken the condition upon which he had been liberated on bail. No explanation, or excuse, of his absconding—for such appears to have been the character of the breach of the condition of liberation—has been suggested. On the 12th instant, a motion was made on his behalf, in the circuit court, for leave to enter bail. His counsel pressed the motion, upon the ground of the pardon, and upon the general course of practice in those ordinary cases of default, in which the condition of recognizances of bail is always considered as a mere penalty to secure punctual attendance. The general applicability of the special and conditional pardon to offenses not mentioned in it could not be admitted. This pardon cannot apply directly to the charges in the two untried indictments. What may be its indirect application to them will be considered hereafter. I did not think that the course of practice, in the familiar ordinary cases of default which had been mentioned, furnished a rule of decision for an aggravated case of such wilful flight as might, not improbably, occur again, if an opportunity were offered. But the counsel seeming to insist that, even in such a case, a renewal of the privilege of liberation on bail was demandable of right, I suggested that, upon the return to a writ of habeas corpus addressed to the marshal, the question might, perhaps, be more fully developed. The application for this writ was therefore substituted for the motion. The writ having been issued by me, not as judge of the district court, but as a judge of the circuit court, and, having been addressed to the officer of the court, the prisoner has, upon the officer's return, the benefit of every argument which could have been available on the original motion. The return, however, states no fact which does not appear in the records of proceedings already mentioned, and concludes with a general reference to the proceedings of record. Nothing on the part of the prisoner to alter the case exhibited by them has been suggested. The question whether he should be admitted to bail stands, therefore, precisely as it did upon the original application.

The points of inquiry are: (1) Is the renewal of liberation upon bail demandable in this case of right? (2) Should the privilege be renewed of grace, in other words, in the exercise of regulated judicial discretion?

1. The inestimableness of the privilege of liberation upon bail, as a safeguard of the right of personal liberty, is not, nor is the original extent of the privilege, here in question. The question is upon what condition the retention of the privilege by a party who has already been liberated on bail depends of right, or upon what condition his right of demanding a renewal of the privilege depends. The question, as it will soon be narrowed, is, upon what condition may an accused person who, after proper arrest and hearing, has been duly committed to

official custody, demand liberation from such custody? Here two converse propositions may be stated: The first, that persons accused of crime should never, until conviction, be under any personal restraint, except such as is necessary and proper for securing their attendance in court to answer any charges, and for preventing their departure from court without leave; the second, that persons regularly committed cannot reasonably ask liberation, except upon the essential twofold condition that they will thus attend in the proper court or courts, and will not depart thence without leave.

The proposition which is to be considered and applied is the second. It is expressed in the condition of the recognizances usually taken when parties, who have been thus committed, are liberated from official custody. Such recognizances neither create the condition nor define it originally. The recognizance of a prisoner liberated without bail or surety is upon this condition. In such a recognizance he is usually bound in a certain sum of money. But this might be omitted. If he should be simply liberated by a court from the custody of its officer, on condition to appear in the court at the next term, and not depart without leave, the acknowledgment of this on record would have the same effect as in a recognizance of the usual form. The condition is that prescribed by law,—or that which may be lawfully prescribed,—in every case of liberation from such commitment.

When sureties of the party liberated are bound of record for his fulfilment of the condition, the record of their engagement on his behalf becomes a recognizance bail. He is then, in legal phraseology, delivered to his friends, who thus engage that he will fulfil the condition. That he may be relieved from the personal restraint which is unavoidable under an official custody, they become, as it were, his private jailors. They are so designated in books of authority. Though there cannot be a lawful private prison, understood as a place of compulsory detention, there may be such private jailors of a prisoner's own choice. This designation applies practically to the bail so far, at least, that they may, at any time, surrender him, and thus relieve themselves of responsibility for his fulfilment of the condition. In cases of such surrender, he commits no breach of the condition, and retains, therefore, unimpaired, his right of liberation upon bail. He may thus avail himself of the privilege as often as occasion may, in this, or in any other manner, occur without his own inexcusable default. His original privilege still subsisting, it is not renewed when he thus, from time to time, avails himself of it anew. But, after an unexcused and unatoned, wilful breach of the essential condition of the privilege of liberation upon bail, the privilege does not continue to exist; nor is a renewal of the privilege then demandable of right. The

application of these remarks to the present case must be obvious.

Here a few words on the question of contempt may be proper. That the act of this party was an aggravated contempt of court is indisputable. The police of a tribunal of criminal jurisdiction could not be maintained without an occasional cognizance of contempts less aggravated, consisting in the mere nonattendance of parties. For such contempts, parties who have abused the privilege of liberation upon bail must occasionally be committed. I have had occasion thus to commit a party to temporary custody, where the recognizance of his bail was not forfeited; and this might happen where a forfeiture of it had occurred, and had, as to bail, been respited. If a privilege of renewed admission to bail continued to exist, notwithstanding any breach of the condition of the original liberation upon bail, the commitment for contempt would prevent actual liberation. An absconding party, retaken and committed for the contempt, should not be liberated so long as his detention may be necessary to maintain the police of the court, and prevent him from absconding again before trial. Beyond the detention for these purposes, his imprisonment for the contempt should not ordinarily be prolonged. But he might also, in some cases, properly be fined for it. These are questions which cannot ordinarily arise under a writ of habeas corpus, because a party committed for contempt cannot ordinarily, under this writ, dispute the lawfulness of such a commitment. In the present case, the privilege of liberation upon bail has been forfeited, independently of any question of contempt. When the contempt has been purged or punished, the strict custody of a party who has thus forfeited the privilege, may be necessarily continued in order to secure his presence at a future trial.

2. The second point of inquiry is thus reached. It is whether, through the regulated exercise of judicial discretion the privilege which this party has thus forfeited should be renewed in his favor. In ordinary cases, the renewal of the privilege, when forfeited, or the respite of the forfeiture, is so much, of course, that the form of the question is usually overlooked. Thus the question whether the privilege had been forfeited by an accused party is very seldom even considered, whatever consideration may be given to the question whether his bail should continue pecuniarily liable. The privilege, when the contempt has been purged, ought, upon payment of the official charges incurred, to be renewed in almost every case, and often without any such payment. Perhaps the only case in which the privilege ought not to be thus renewed may be where it is apparent that the party thus asking grace might probably abscond if it were granted. The present is, unfortunately, a case of this kind.

What has heretofore been called, for want of a suitable designation, the indirect effect of the pardon, must, however, be considered. Here the two general subjects of the prosecution, which have already been mentioned, must be considered separately. As the indictments were certified into the circuit court, if the defendant had been acquitted of the forgery of which he was convicted, he might afterwards fairly have been tried for the procurement or attempted procurement of desertion. But, after a conviction under the former charge, he probably would not have been tried under the latter. In the sentence of the first instant, the measure of his guilt, in all the eighteen cases of alleged enlistments credited to the Seventh district was considered by the court. The remission of his imprisonment under that sentence ought, I think, to have the same effect as if he had undergone the imprisonment. Should he be convicted hereafter under either of the two untried indictments, I, therefore, doubt if any other than a nominal punishment would be imposed. Therefore, if accusations relating to alleged enlistments for this district were alone in question, the propriety of detaining him in strict custody would be so doubtful that I would probably at once admit him to bail, and, if he should not be tried at the next term, would then probably discharge him absolutely.

The question is different as to the twenty-two cases which compose the second of the two general subjects of accusation. These, it will be recollected, were cases of alleged enlistments of recruits for the Eleventh district. The certificate to the circuit court included no indictment under this head of accusation. As has already been stated, no such indictment has been as yet found. The accusations under this head were not considered in determining the measure of the punishment when the sentence was imposed. In these twenty-two cases he continues liable to prosecution, and I cannot perceive that under this head the prosecution can be directly or indirectly affected by the special pardon. His recognizance applied not less to these than to those upon which indictments were found and certified into the circuit court. The transmission to that court of the recognizance did not alter its effect as to the district court. If a re-commitment were necessary, the fact that when liberated upon bail he had broken the condition of such liberation would appear of record, and would be the cause of recommitment. Independently of any question of contempt, a party who, having thus forfeited his original privilege of liberation upon bail, is detained in strict custody, does not forfeit certain ulterior privileges, which have been mentioned. Thus, he may still demand a speedy trial; and, if trial is refused after the latest proper time for it, may then obtain liberation upon bail, or may, through the course of jail delivery or otherwise, obtain absolute liberation. Admission to bail, as the means or mode of deliverance from detention unduly prolonged, may thus be demandable as of right, though the primary privilege has been forfeited. In taking bail in such a case, extraordinary caution as to the amount and as to the number and sufficiency of the securities may be necessary. But these would be merely incidental subjects of consideration.

On the whole case of this party, he should not be admitted to bail unless it appears that he cannot have a trial without greater delay than is incidental to the regular course of procedure. If an indictment had been heretofore found as to any one of the last-mentioned twenty-two cases, whether it had been certified into the circuit court or not, I would not admit him to bail, but would hold him for trial at the August sessions of the district court, or October sessions of the circuit court. Afterwards, if the case should not have been tried, the question of admitting to bail might arise. But, as no such indictment has been found, the past as well as probable future delay must be considered. For such delay the law officers of the United States who have conducted the prosecution cannot be censurable, because it may be assumed that the special pardon was unforeseen by them. But the accused, however otherwise to blame, is not, in this respect, in fault. He ought not to be detained for an extraordinarily long time in strict custody for any reason arising from the fact that he has received the special pardon. In this case the question of past and probable future delay is complicated with peculiar considerations.

The transactions upon which the prosecution is founded occurred in September last. Notwithstanding the unavoidable protraction of the preliminary investigations, bills of indictment might have been laid before the grand jury for either the February or May sessions of the district court. Such bills may be prepared for the grand jury at the approaching August sessions. Should they be found, the course which I might adopt in retaining them in the district court, or certifying them into the circuit court, is perhaps doubtful. This would be immaterial if there could be any definite probability of trial at the first regular sessions of either court. But there cannot, from the character of legal proceedings, be any such definite probability. After two terms, at both of which it has been possible to indict and try an accused prisoner according to law, he, in ordinary cases, becomes entitled to an absolute discharge. See 5 Casey, 135. In this case, no indictment will have been found, at the earliest, until the third term. If the accused party had not abused his primary privilege of discharge on bail, he would now be entitled, not to a mere dis-

charge on bail, but to an absolute discharge. To refuse to admit him to bail under such circumstances would, therefore, perhaps be an excess of strict custody. Should bail be taken, the decision will not be a precedent for any probable case of another party who may, by absconding, have broken the condition of the original liberation upon bail. I have great doubt of the correctness of the decision which I am about to make. But every doubt which reason cannot remove should be resolved in favor of personal liberty. I will, therefore, admit this party to bail in $10,000, with three sureties, each in $5,000, for his attendance at the next district and circuit courts. The recognizance of bail will be in such form that more than $10,000 in the whole will not in any event be payable by the sureties, and that $5,000 will be the greatest amount payable by any one surety.