519 A.2d 462

**Frank SHELLHAMER**

v.

**Nadine GREY, Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 1986.

Filed Dec. 9, 1986.

500

Michael B. Kaleugher, Pittsburgh, for appellant.

Edward J. Balzarini, Jr., Pittsburgh, for appellee.

Before DEL SOLE, MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of the Court of Common Pleas of Allegheny County entered in favor of the plaintiff/appellee, Frank Shellhamer, and against the defendant, Nadine Grey, in the amount of $269,676.44. We reverse and remand.

The facts, viewed in a light most favorable to the verdict-winner and drawing all reasonable inferences therefrom, reveal that at approximately 10:15 p.m. on the 26th of June, 1981, the plaintiff, age 37 and mildly retarded at the time, was about to cross the roadway where Helen Drive intersects with the four-lane McFarland freeway situated in the Pittsburgh/Mt. Lebanon area of Allegheny County.

The plaintiff looked in both directions before traversing the two lanes of the south-bound McFarland roadway without incident. He paused in the middle of the four-lanes, and, seeing no approaching vehicles from the remaining two north-bound lanes, he had completed crossing the third lane closest to the medial strip before he was struck and rendered unconscious by the vehicle driven by the defendant.

The weather was dry, and, according to the defendant's own recollection of her line of vision, there were no vehicles on either side of the highway to obstruct her view for some 300 feet before the point of impact. The defendant recalled that she had her headlights on and her vehicle was being driven between 25–30 miles per hour in the right hand (curb) lane proceeding north on McFarland. There was a

street light at the intersection, which was otherwise not controlled by any traffic lights, signs or pavement markings as for a pedestrian cross-walk.

The defendant also admitted to being familiar with the roadway in question since she had driven and walked it over a period of two years on her way to work to a donut shop adjacent to where the accident occurred.

As for the victim's ability to remember what transpired, he could recall no more than crossing the roadway, being struck after walking three-quarters of the width of the highway and waking up in the hospital. As a result of the accident, the victim's mild retardation became more acute and will hamper his ability to seek any type of meaningful employment.

The most that the defendant could offer was that, while driving, she saw "something checkered"—the victim's slacks. She did not know how far away it was, but when she saw the checkered object she "[s]lammed on [her] brakes and [the victim] was on top of [her] car." The victim rolled onto the hood of the vehicle and fell to the left (driver's) side. The time lapse between seeing "something checkered" and the actual contact was "[m]aybe two, three seconds."

Thereafter, the defendant put her vehicle in park after the collision and ran to the nearby donut shop to get help. The police and paramedics arrived within 15 minutes to transport the victim to the hospital for a skull injury which required surgery and a subsequent period of rehabilitation that never brought the victim back to his former self.

In addition, there was a vehicle traveling in the left (fast) lane, some 75–100 feet behind the defendant, but the driver and passenger could not shed any light as to the direction the victim was proceeding prior to the accident. However, they did confirm the speed at which the defendant was driving and the weather conditions. Both witnesses were only able to recall what occurred after impact.

504

The jury, hearing all of the evidence, found the defendant to be 85% negligent and the plaintiff 15% negligent. Damages for loss of earning capacity were assessed at $80,-000.00, while all other damages awarded came to $210,-000.00. The verdict was thereafter molded by the trial court. Following this, the plaintiff sought and was granted delay damages by the trial court under its interpretation of Pa.R.Civ.P. 238. Post-verdict motions were filed and denied. The verdict was reduced to judgment and this appeal ensued.

The first issue we will address is labelled Roman numeral IV in the appellant's brief and complains of the trial court's error in assessing Rule 238 delay damages of approximately $40,000.00 in the face of a defendant who was unable to offer more than the limits of her insurance policy ($25,000.00) to settle the case prior to trial.

The defendant urges that her single status and minimum wage job, with no assets and no ability to pay the Rule 238 damages, render the imposition of delay damages "unfair, confiscatory, and unreasonable." The defendant asks that the Rule 238 damages be vacated, or, in alternative, a hearing be conducted below concerning the financial circumstances she finds herself and if such are justifiable grounds to exempt her from having to pay delay damages.

The appellant concedes that at the time her brief was written there was no definitive law in this Commonwealth on the issue at bar. This is even more evident from the Common Pleas Court cases cited by the trial court and the appellee in support of the assessment of delay damages despite a defendant's indigency or limits of his/her insurance policy impairing his/her ability to make an offer to settle commensurate with the injury inflicted, i.e., *Berry v. Anderson*, 115 Montg.L.Rev. 121 (Montgomery 1984); *Hill v. Letender*, 131 Pitts.L.J. 154 (Allegheny 1983); *Santiago v. Kauffman*, 6 Phila. 141 (Philadelphia 1981).

Our Supreme Court's recent holding in *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986), read in conjunction with this Court's decision in

*Berry v. Anderson,* 348 Pa.Super. 618, 502 A.2d 717 (1986), gives us a clear course to pursue.

To start with, in regard to all cases pending in the courts of this Commonwealth as of October 8, 1986, *Craig* suspended the "mandatory provisions of Rule 238 which assess delay damages against defendants without regard to fault...." 512 Pa. at 65, 515 A.2d at 1353. Also, the path to take in the face of such an order was outlined in *Craig,* i.e., the determination of "fault", now injected into the assessment of one's entitlement to Rule 238 damages, is to be decided by petition and answer at the trial level, with the option available to the judge to hold a hearing to resolve any factual disputes.

The *Craig* Court did caution, however, that the prospective effect of its decision would foreclose those parties whose cases were then in the appellate process or post-trial stage from challenging such awards *if they had not mounted attacks on the Rule 238 aspect of the damage award by the date of its ruling.*

Instantly, the issue of delay damages having been raised before this appellate court (as well as in the court below) prior to the *Craig* decision renders it preserved and subject to remand for an evaluation of the "fault" element, which is now required as a condition precedent to the imposition of Rule 238 delay damages.

Further, this Court's decision in *Berry v. Anderson,* supra, dictates a remand as well.

In *Berry,* the Court was confronted with the question of whether Rule 238 delay damages could be imposed, in addition to an award of compensatory damages by a jury, without first inquiring into the financial status of the defendant/appellant.

An automobile accident involving the defendant left the plaintiff partially paralyzed. The defendant offered to settle for the full amount of her insurance policy ($100,000.00). The offer was rejected and, after a trial, an award of

$2,000,000.00 was entered by the jury. This, in turn, was molded to add delay damages under Rule 238.

Our Court, in examining Rule 238, detected a latent ambiguity in that the Rule was silent with regard to a defendant who lacked resources to make an offer to settle sufficient enough to avoid the monetary penalty of delay damages. In resolving this question, the Court proceeded to examine the history of the Rule and found that its primary objective was to facilitate early settlement. This, the Court felt, would not be fostered by penalizing an indigent defendant who proffered all of the financial resources at his/her disposal, although woefully inadequate when measured against the actual award made by the jury at trial.

To exact upon a defendant the payment of delay damages, albeit an offer of a reasonable settlement was made, was held to run counter to the purpose sought to be attained by the Supreme Court in its promulgation of Rule 238. In line with such thinking, the en banc Court, speaking through Judge Rowley, stated:

> We hold that a plaintiff shall not be awarded damages for delay pursuant to Pa.R.C.P. 238 after the date of the defendant's offer when the court determines that, because of the defendant's indigency, the offer was the full amount available for payment of the plaintiff's claim and it was impossible for the defendant to have offered more.
>
> * * * * * *
>
> Reversed and remanded for an evidentiary hearing. Jurisdiction is relinquished.

348 Pa.Super. at 627, 502 A.2d at 722. In like fashion, in light of *Berry,* we are required to hold that the imposition of delay damages against the defendant was unwarranted and requires a remand so that an evidentiary hearing may be conducted to determine the financial status and ability of the defendant to pay.

On remand, if the defendant is found not to be at "fault", under the factors made mention of in *Craig,* there would appear to be no reason to inquire further as to her ability to

pay under *Berry.* However, if "fault" is established, then the financial status of the defendant is a proper subject of inquiry so that damages can be imposed according to ability to pay.

The second issue we will treat relates to the claim that the trial court erred in not allowing the defendant to pay the insurance proceeds (a draft in the amount of $25,000.00 and accumulated interest) into court, unconditionally.

■ We commence our discussion by observing that the payment of money into court is not a matter of right. On the contrary, it is either based on a privilege given by a statute or, when the facts set forth in a petition to deposit are such as would warrant it, on the equitable discretion of the court. See *Nieman v. Bethlehem National Bank,* 28 Northampton Cty. Rptr. 19, 21 (1941); 23 Am.Jur.2d, Deposits in Court § 1 (1983) (Rules, statutes or discretionary power of court come into play as to the deposit of funds in court).

■ It is the defendant's contention that 42 Pa.C.S. § 6141 allows for the payment of the draft to the plaintiff or to the court, the only requirement being that the payment be credited to the person making it against the final settlement or judgment. The plaintiff, on the other hand, argues that Section 6141 pertains only to settlements and does not provide for partial payments on verdicts. In support thereof, he cites 42 Pa.C.S. § 8101 and *Krupa v. Williams,* 316 Pa.Super. 408, 463 A.2d 429 (1983).

We have examined the statutes referred to us by the parties. In particular, Section 6141, which, contrary to the plaintiff's contention, applies not solely to settlements, but to "any payment made" with regard to an injured person. Nonetheless, we do not find Section 6141 to be beneficial to the defendant either, for nowhere therein does it obligate the trial court to accept custody of any (partial) payment(s). Cf. *Krupa, supra,* 316 Pa.Super. at 423–24, 463 A.2d at 436–37 ("There is no provision under ... Rule [238] for the court to become the stakeholder as it did in the instant

case[, i.e., prior to verdict]. Rule 238 is geared to negotiations and settlement between the parties; these offers do not require court approval. If the trial court chooses to act as stakeholder, as it did in this instance, it is merely that. Rule 238 itself provides no basis for an order determining aspects of the insurer's liability other than damages for delay.").

Next, our review of the record indictes that the insurer (Erie Insurance Exchange) has taken no steps, on its own behalf, to terminate the running of interest on (any portion of) the amount awarded by the jury to the plaintiff in this civil suit.

The post-verdict petition seeking the payment of insurance proceeds and accumulated interest (without limitation) to the plaintiff or the prothonotary was filed by counsel *for the defendant/insured.* The only mention of the insurance carrier in the petition was with reference to a pre-trial offer made by it of the insurance proceeds (of $25,000.00), which was rejected by the plaintiff. However, it must be pointed out that the pretrial offer of settlement by the defendant, as authorized by the carrier, was conditional upon the plaintiff executing "releases" and "a certificate showing that the lawsuit ... ha[d] been settled and discontinued." Absent a condition upon which a party has the right to insist and to which the other party cannot reasonably object, such a tender has been considered invalid. See *Nickols v. Jones,* 166 Pa. 599 (1895); *Booker Bros., Inc. v. American Casualty Co. of Reading, Pa.,* 57 D. & C.2d 353, 358 (1971), aff'd 221 Pa.Super. 762, 291 A.2d 896 (1972); 25 Standard Pennsylvania Practice 2d, § 128:13 (1983).

Further, the absence of the insurer from the suit, save for the jointly submitted pre-trial tender, counsels against us characterizing it as one authorized in fact or in law to tender a payment on behalf of the defendant as the case stands presently, which right does exist to validate a tender otherwise. See *Johnston v. Gray,* 16 Pa. (Serg. & R.) 361, 365–66 (1827); 86 C.J.S. Tender § 35 at 576 (1954) ("... a tender to be valid must be made by [the debtor] or someone

representing him.... although it has been held that a person who has an interest in the consequences of a tender may make an effectual tender....").

Parenthetically, this Court would note that, at this stage in the litigation and in the absence of any action on the part of the insurer, treatment of the insurer as an interpleader under the Pennsylvania Rules of Civil Procedure 2301 *et seq.* would be inappropriate since there is no indication that the insurer would be exposed to double liability or multiple litigation. See *Fisher v. Stevens Coal Co.*, 136 Pa.Super. 394, 7 A.2d 573 (1939); 25 Standard Pennsylvania Practice 2d, § 129:7 (1983). Moreover, "an insurer of a defendant—who is not itself a party to the action—cannot invoke the interpleader process." *Id.*, § 129:6 at 429–30, citing *Luckasevic v. Borough of Charleroi*, 50 Washington Cty. Rpts. 5 (1969).

Notwithstanding the aforesaid, unlike the interpleader under the Rules of Civil Procedure, the stakeholder proceeding in equity, who is not a defendant in a pending action, may interplead by filing a complaint naming the rival claimants as defendants. In this context an automobile insurance company which was not a defendant in a pending action, but which desired to pay its policy limits to the court to avoid the running of interest, was permitted to resort to equitable interpleader to achieve its end. See *Nationwide Insurance v. Ansel*, 30 Fayette L.J. 16 (1967); see also *Paugh v. Delaware County Trust, Safe Deposit & Title Insurance Co.*, 62 Pa.Super. 523 (1916).

In *Ansel*, a complaint in equity for interpleader was filed by the insurer following the trial of its insured, wherein she was found responsible for the injuries sustained by the victims in a vehicular accident. In exercising its equitable powers in permitting the filing of the complaint, the trial court stated:

Interpleader at law is available only to defendants: Pa.R.C.P. 2301; 3 Goodrich-Amram 2301-2. Accordingly, a stakeholder of an automobile liablity insurance fund, desiring to stop the running of interest, and to uncondi-

tionally pay the fund into court for distribution to persons legally entitled thereto, is relegated to equitable interpleader: *McKinley v. Mutual Life Ins. Co.*, 278 Pa. 300 [123 A. 304]; *Book v. Sharpe*, 189 Pa. 44, 47 [41 A. 998]; *Metropolitan Life Ins. Co. v. Doty,* 140 Pa.Superior Ct. 581, 586 [14 A.2d 878]; *Prudential Ins. Co. v. Grabouski,* [Grabowski], 144 Pa.Superior Ct. 243, 246 [19 A.2d 572]; *Fisher v. Stevens Coal Co.*, 136 Pa.Superior Ct. 394 [7 A.2d 573]. The granting of interpleader is within the Court's sound discretion and it may in proper cases direct the writ to issue sua sponte: *Slavin v. Slavin,* 368 Pa. 559, 564 [84 A.2d 313]; *Allegheny County v. Virgin,* 367 Pa. 389, 393 [80 A.2d 807]; *Maxwell v. Phila. Fire Dept.*, 138 Pa.Superior Ct. 356 [10 A.2d 857]; Pa.R.C.P. 2302.

30 Fayette L.J. at 19.[1]

At bar, it is true that the insurer is not a party to the suit. However, it is undisputed that, as made reference to in *Ansel*, a court "may in proper cases direct the writ [of interpleader] to issue sua sponte." *Id.* This inherent power applies to appellate courts, as well as to the Courts of Common Pleas, to afford them the authority to direct an interpleader sua sponte even after the rendition of a final judgment when the interests of justice so require. See *Slavin v. Slavin,* 368 Pa. 559, 84 A.2d 313 (1951); *Allegheny County, for Use of Ed. Vero Co. v. Virgin,* 367 Pa. 389, 80 A.2d 807 (1951). We find the present case to be such an instance.

For example, the payment of the limits of the defendant's insurance policy into court would not appear to be prejudicial to the rights of either party. Given that both litigants are preoccupied with the accumulation of interest on the money tendered [2] ($25,000.00—plaintiff wants it to accrue;

1. *Contra Luckasevic v. Borough of Charleroi,* 50 Washington Cty. Rpts. 5, 10–11 (1969).

2. The opinion limits its discussion to the issue of interest accumulation on the $25,000.00 offered by the defendant because of the exclusion from the record of the policy of insurance. In other words, the policy of insurance not being a part of the record, it would be pure

the defendant wants it to cease), this objective would seem to be accomplished to the satisfaction of all concerned (without any loss to either side) under 42 Pa.C.S. § 3561, which reads:

All money paid into court shall be held in the custody of such officer, shall be invested in such manner, and shall be withdrawn from deposit, as shall be prescribed by general rules. Any such investment, except as otherwise prescribed by or pursuant to general rules, shall be restricted to obligations of the United States or the United States Treasury, or of the Commonwealth.

The Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended April 28, 1978, P.L. 202, No. 53, § 10(48).

The "general rules" referred to in Section 3561 regarding the "manner of investment" of monies paid into court, in this instance they would be the Local Rules of Court of Common Pleas of Allegheny County, dictate that the money "be deposited by the prothonotary in interest bearing accounts". Rule 255.[3] Accordingly, the plaintiff's preoccupa-

speculation and surmise to "assume" that the insurer is legally obligated to pay for the interest accumulating on the entire verdict, i.e., over and above the policy limit of $25,000.00.

Thus, we do not address the liability of the insurance carrier on the interest accumulating on the balance of the jury's verdict, i.e., $208,-750.00. We believe it to be the better practice to leave it to the parties and the court below to resolve the question on remand. At that point, the policy may be produced and read to determine the extent of the insurer's liability with regard to the accumulating interest, save for the $25,000.00 which we have already determined is the responsibility of the insurer to shoulder.

**3.** The entire Rule provides:

Rule *255. *Money Deposited in Court.*

(a) Except as hereinafter provided, all money deposited with the prothonotary shall be deposited by the prothonotary in an institution insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation. All deposits with the prothonotary in excess of Five Thousand Dollars ($5,000) shall be deposited by the prothonotary in interest bearing accounts, or may be invested in United States Government obligations or United States Government guaranteed obligations.

(b) All interest accrued on deposits, other than deposits of costs, made for a period of three (3) months or more in excess of Five Thousand Dollars ($5,000) shall be paid to the party or parties ultimately determined to be entitled to the fund.

tion with the potential loss of interest with the deposit of money into court[4] (see plaintiff's brief at 16) is obviated by the provisions of Section 3561 and Allegheny County Local Rule of Court 255.

 Therefore, our reading of the facts, against the backdrop of the applicable statutes and case law, would warrant the *insurer's* payment of the limits of the policy of insurance into court *with the filing of a complaint in equity for interpleader.*[5] *Ansel, supra;* 26A C.J.S. Deposits in Court § 3.[6] The defendant/insured's efforts to do so

 (c) All accrued interest not distributed pursuant to subdivision (b) of this rule shall be paid to the county treasurer.

 (d) The prothonotary shall maintain a record of all monies deposited, and paid out, setting forth the names of the parties from whom the money was received and to whom the money was paid, and the commissions charged pursuant to subdivision (e) of this rule.

 (e) The prothonotary shall charge for the benefit of the county a commission equal to one-half of one percent (½%) on all deposits up to one thousand dollars ($1,000) and one fourth of one percent (¼%) on all deposits and interest accured on deposits of one thousand dollars ($1,000) or more.

4. Generally, however, a fund paid into court does not pay interest. *Appeal of County Treasurer,* 8 Erie L.J. 83, 84 (1926) ("... a fund paid into court does not bear interest: *Oliphant vs. Frost,* 9 Pa. [Barr.] 308 [(1848)]; 33 C.J. 245[.]"); see also 23 Am.Jur.2d, Deposits in Court §§ 7, 19 (1983). The exception obviously being where a statute indicates otherwise, as is the case here with 42 Pa.C.S. § 3561 when read in conjunction with Allegheny County Local Rule of Court 255.

5. Interest is to cease running with its filing. The insurer's failure to act sooner to mitigate the accrual of interest, under principles of equity—one who sits on his rights cannot complain thereafter of wrongs incurred, justifies the time set for the cessation of interest-accumulation. Cf. *Booker Bros. Co., supra* at 358.

 As an aside, we note that the trial court's denial of the *defendant's* payment of monies into court unaccompanied by any reason for the denial. We would ask that any future refusal or grant be accompanied by reasons. See *McCanna & Fraser Co. v. Continental Hotel Co.,* 252 Pa. 482, 484, 97 A. 700 (1916) (holding that a refusal to grant such a petition should, nevertheless, be accompanied by reasons therefore).

6. While the order for deposit is more commonly made on motion of the plaintiff, a defendant may also make the motion in a proper case. *Commonwealth ex rel. Horner v. Houk,* 96 Pa.Super. 363, 375 (1929). Also, it has been held that a stranger to the suit may successfully apply for leave to pay into court, pending the litigation, a fund claimed by

would run counter to the rule that any tender less than the total amount due need not be accepted by the plaintiff/creditor, since it is ineffective as a tender, and allows the interest thereon to keep running. See *Kelly v. Allegheny County Redevelopment Authority*, 411 Pa. 210, 191 A.2d 393 (1963); *Gold & Co. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 76–77, 421 A.2d 1151, 1155 (1980); *Smith v. Cassida*, 23 D. & C.2d 287, 302 (Beaver Cty., 1960), aff'd 403 Pa. 404, 169 A.2d 539 (1961); 47 C.J.S. Interest & Usury § 62 at 149 & n. 41 (1982) (The accrual of interest on a debt is not generally suspended by the tender of an amount less than the amount due); 86 C.J.S. Tender § 7 (1954); 25 Standard Pennsylvania Practice 2d, § 128:9 at 408–09 (1983); see also 6 Couch on Insurance 2d, § 31:29 at 44–45 (Rev. ed. 1985).

Accordingly, in light of our remand for an evidentiary hearing on the propriety of imposing Rule 238 damages against the defendant, we direct that the record be opened to permit the insurer the opportunity to interplead, with directions that such a complaint be filed within 20 days of the filing of the opinion herein. See *Virgin, supra.*

■ The last point we wish to make, finding all the remaining claims of the defendant to have been properly dealt with by the trial court in its opinion to us, deals with the defendant's assertion that the trial court erred in charging that "... every person shall drive at a *safer* than appropriate speed when approaching and/or crossing an intersection." (Emphasis added) The trial court stated that the underlined portion of the instructions was probably a typographical error. However, since the defendant's counsel did not take specific exception to the language used at the completion of the court's charge to the jury, we find the issue waived. See *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

several parties—payment into court in interpleader proceedings. 26A C.J.S. Deposits in Court § 3 at 475 & n. 32 (1956).

Judgment reversed and the case is remanded for proceedings consistent with the opinion herein written. Jurisdiction is not retained.