**David H. OVERDORF, Administrator of the Estate of Kristin R. Overdorf, Deceased, Appellee,**

v.

**Sharon FONNER, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 12, 2000.

Filed Feb. 14, 2000.

Reargument Denied April 18, 2000.

John D. Newborg, Pittsburgh, for appellant.

Edward J. Balzarini, Pittsburgh, for appellee.

Before KELLY, JOHNSON, and TAMILIA, JJ.

JOHNSON, J.:

¶ 1 In this appeal, we address whether delay damages are properly assessed where the defendant tenders primary insurance policy limits through her personal automobile insurance carrier, coupled with a full release contingency that would defeat recovery of excess liability coverage on the same accident. We conclude that a settlement offer that is tendered in exchange for the plaintiff's complete release of all parties, where there exist other assets through other insurance policies, does not constitute an offer of the full amount available for payment of a plaintiff's claim. Accordingly, we affirm the order that awarded delay damages.

¶ 2 On April 7, 1991, Kristen R. Overdorf, age 27, was killed after being struck while bicycle riding on a public street in the city of Washington, Pennsylvania. Sharon Fonner was operating the motor vehicle that struck and killed Overdorf. The motor vehicle was owned by Tomsic Motor Company, Inc. (Tomsic) and was rented by Fonner's husband while Fonner's automobile was in the Tomsic dealership for repairs. To recover damages arising from Overdorf's untimely death, her estate (the Estate) sued Sharon Fonner, the Commonwealth of Pennsylvania Department of Transportation (PennDOT), the City of Washington, Fonner's husband, and Tomsic.

¶ 3 The Fonners had personal automobile coverage with Travelers Insurance Company (Travelers) with liability limits of $50,000.00. In addition, excess liability coverage was available through Tomsic's carriers in the sum of $15,000.00 through Allstate Insurance Company (Allstate) and $1,000,000.00 through Motorists Mutual Insurance Company (Motorists Mutual). The Fonners' personal insurance coverage with Travelers was primary to these excess insurance policies. While this matter was pending, Allstate consistently indicated its willingness to pay the limits of its excess liability coverage ($15,000.00) as soon as Travelers's coverage ($50,000.00)

had been paid. Motorists Mutual refused to tender any payment on its coverage, claiming Fonner was not entitled to coverage because her husband, rather than herself, had signed the rental agreement for the covered vehicle.

¶ 4 On November 4, 1991, Travelers confirmed in writing its October 31, 1991 oral offer to pay the policy limit of $50,000.00 to the Overdorf's Estate "in exchange for a complete release of our insured [Fonner]." The Estate did not accept this offer, but rather commenced this civil action on March 11, 1993. The sheriff served Fonner with original process on March 24, 1993. On August 5, 1993, Travelers wrote to counsel for the Estate, indicating that its "offer of policy limits, in the amount of $50,000.00[,] remains in effect on behalf of our policyholder." Then, on October 19, 1994, counsel for Travelers wrote to counsel for the Estate, indicating its willingness to draft a joint tortfeasors release that would release Travelers and Sharon Fonner "for any potential personal liability." The record does not reflect that any such release was ever prepared or tendered to the Estate.

¶ 5 On October 10, 1995, Fonner and her husband filed a joint Petition for Debt Relief, under Chapter 7 of the Bankruptcy Act, in the United States District Court for the Western District of Pennsylvania. The Fonners were released from all dischargeable debts on February 23, 1996. The Estate petitioned the bankruptcy court, informing it that the Fonners' original petition for relief in bankruptcy did not include the Overdorf civil action as a potential claim. The bankruptcy court modified the discharge order, preserving the Estate's right to pursue any claims involving liability insurance coverage.

¶ 6 On December 2, 1998, following a trial in the case now before us, a jury awarded the Estate damages of $862,-500.00 against Fonner. The Estate filed a petition for delay damages pursuant to Pa.R.C.P. 238, which Fonner opposed. Following a hearing, the Honorable David L. Gilmore awarded delay damages, finding that "Travelers Insurance Company's offer to pay its policy limits, provided the Plaintiff execute a Joint Tortfeasors Release, did not constitute a tender of the entire policy limits as contemplated by Rule 238." Order, 5/19/99. In his order denying Fonner's petition for reconsideration, Judge Gilmore again found that "Defendant had the ability to tender the policy limits without the tortfeasors release. Thus, the Defendant could have offered more and the Petition will not be granted." Order, 6/21/99. On July 6, 1999, upon the Estate's praecipe, the prothonotary entered judgment on the verdict in the amount of $862,500.00, and on Judge Gilmore's order of June 21, 1999, assessing delay damages, in the amount of $377,-140.59, with interest from December 2, 1998.

■ ¶ 7 Fonner filed this appeal on July 14, 1999, from the order awarding delay damages. Although an appeal from an order awarding or denying delay damages is interlocutory, here, judgment was entered prior to the notice of appeal being filed, and our authority to review the merits of the appeal has been perfected. *See Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 513–16 (1995).

¶ 8 Fonner frames the issue for our consideration as follows:

WHETHER DELAY DAMAGES MAY BE AWARDED WHERE THE DEFENDANT IS BANKRUPT AND THE INSURER FOR THE DEFENDANT HAS OFFERED ITS FULL POLICY LIMITS TO THE PLAINTIFF IN SETTLEMENT?

Brief of Appellant at 3.

■ ¶ 9 In reviewing a claim that the trial court erred in awarding delay damages, our scope of review is plenary. This court, sitting en banc, has set forth our standard of review in these cases as follows:

[A] defendant must offer all assets that he has available for payment in order to escape liability for delay damages. Whether defendant has tendered all that he has available is determined by the trial judge at an evidentiary hearing. Since the trial court's findings are inherently factual, we will only reverse if we find an abuse of discretion. Furthermore, a defendant opposing the imposition of delay damages has the burden of showing that he is entitled to relief. *Krysmalski by Krysmalski v. Tarasovich*, 424 Pa.Super. 121, 622 A.2d 298, 307 (1993) (citations omitted). *Accord Krichten v. Wolpert*, 431 Pa.Super. 194, 636 A.2d 196, 198 (1994). Here, Judge Gilmore found that Fonner had not tendered all of her assets available through insurance coverage on the accident because she had conditioned the payment of a portion of that total coverage upon the Estate's execution of a joint tortfeasors release. Fonner bears the burden of establishing that she is entitled to relief on this appeal. *See Krysmalski*, 622 A.2d at 307.

¶ 10 With respect to the issue on this appeal, Rule 238 provides in pertinent part:

### Rule 238. Damages for Delay in Actions for Bodily Injury, Death or Property Damage

\* \* \*

**(b)** The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,

(1) after which the defendant has made a written offer of

(i) settlement in a specified sum with prompt cash payment to the plaintiff, . . .

\* \* \* \*

and continued that offer in effect for at least ninety days or until commencement of trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, ver-

dict or decision, exclusive of damages for delay, more than 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash payment to the plaintiff; or

(2) during which the plaintiff caused delay of the trial.

Pa.R.C.P. 238, 42 Pa.C.S.

¶ 11 Under Rule 238(b), the defendant, who bears the burden of proof, has two bases upon which to oppose a motion for delay damages: (1) establishing that the requisite offer has been made and (2) establishing that the plaintiff was responsible for specified periods of time during which the trial was delayed. We have modified the first basis found in Rule 238(b)(1) by declaring that a plaintiff shall not be awarded damages for delay after the date of the defendant's offer when the court determines that, because of the defendant's indigence, the offer was the full amount available for payment of the plaintiff's claim and it was impossible for the defendant to have offered more. *See Berry v. Anderson*, 348 Pa.Super. 618, 502 A.2d 717, 722 (1986) (en banc). In this case, Fonner argues only that she is bankrupt and that her insurer has tendered to the Plaintiff the offer required by Rule 238(b)(1)(i). The parties do not dispute that Fonner's offer of settlement was made and continued for a period of at least ninety days. Nor is there any dispute that the jury's verdict of $862,500.00 was more than 125 percent of Fonner's settlement offer. We must consider only whether the initial tender of the $50,000.00 proceeds in Fonner's personal insurance policy, coupled with a demand for the execution of a general release prior to making any prompt cash payment, satisfies the requirements of Rule 238(b)(1)(i), thereby resulting in an exclusion of any delay damages.

¶ 12 Fonner contends that the facts of record do not support the imposition of delay damages in this case. She relies on *Sun Pipe Line Co. v. Tri–State Tele-*

*comm., Inc.*, 440 Pa.Super. 47, 655 A.2d 112 (1994), in contending that delay damages are not warranted. Fonner argues that in *Sun Pipe Line*, this Court considered "the exact same issue raised in the instant appeal," and that delay damages are tolled where a defendant is bankrupt and the defendant's insurer has offered a settlement of full policy limits. Brief of Appellant, Summary of the Argument, at 10. We find *Sun Pipe Line* distinguishable.

¶ 13 *Sun Pipe Line* involved a consolidated civil action bringing together a class action by homeowners affected by a ruptured pipeline and oil spill and a separate action by the pipeline owners to recover for the cost of lost gasoline, repairing the ruptured line, and cleaning up the spill. 655 A.2d at 115. The construction accident occurred in 1982. In 1986, after the issue of liability had been considered, a jury apportioned liability between and among Tri–State Telecommunications, Inc., which performed the underground cable installation and ruptured the pipeline; Sun Pipe Line; the township engineer; E.A. Design, Ltd. (Design), which was hired to prepare the construction maps for the cable network; and Davis Enterprises, Inc., the owner of the cable franchise. *See id.* After certain settlements were negotiated and after the class action case was settled, a jury awarded compensatory damages to Sun Pipe Line in December 1992. *See id.* at 116. Sun Pipe Line appealed, arguing that its total damage award was inadequate. *See id.* at 117. On the issue of delay damages, Sun Pipe Line argued that the trial court erred in stopping the accrual of delay damages prior to the date when a verdict was entered. *See id.* at 120. It further contended that an evidentiary hearing should have been performed to determine the defendants' insolvency and that stopping the accrual of delay damages was improper in the absence of an indication that neither defendant could have offered more. *See id.*

¶ 14 In rejecting Sun Pipe Line's claims for additional delay damages, this Court relied on our holdings in four earlier cases: *Miller v. Hellman*, 433 Pa.Super. 539, 641 A.2d 592 (1994); *Krichten v. Wolpert*, 431 Pa.Super. 194, 636 A.2d 196 (1994); *Krysmalski*, 622 A.2d 298; and *Berry*, 502 A.2d 717.

> In those cases, we held that a plaintiff may not be awarded delay damages pursuant to Rule 238 *after* the date the defendant's insurer offers its policy limits *if the trial court determines that due to the defendant's indigency, the offer of the policy limits was the full amount available for payment of the plaintiff's claim and it was impossible for the defendant to have offered more.*

*Sun Pipe Line*, 655 A.2d at 120 (emphasis added). In *Sun Pipe Line*, we recognized that one of the defendants had transferred to the plaintiff a bad faith claim against the defendant's insurer, and in exchange, the plaintiff had agreed not to execute any judgment it obtained against that defendant's personal assets. *Id.* We also pointed out that the bankrupt status of the other defendant was well documented. *See id.* We concluded "it would be an exercise in futility to remand for an evidentiary hearing on [one of the defendant's] bankrupt status or ability to tender money." *Id.*

¶ 15 In rejecting Sun Pipe Line's contentions, we contrasted the facts in that case with those present in *Krysmalski by Krysmalski v. Tarasovich*, where the evidence established that the defendant had a $60,-000 apartment building, which he had failed to offer in addition to insurance limits. *See* 622 A.2d at 308. In rejecting Tarosovich's appeal on the issue of delay damages, we found that "Tarosovich owned additional assets which he chose to squander, knowing that they may eventually be subject to execution." *Krysmalski*, 622 A.2d at 308. *Sun Pipe Line* and *Krysmalski* both stand for the proposition that where an indigent defendant offers his or her policy limits, the trial court is still

obliged to examine all assets available to that party. The defendant may successfully withstand the imposition of delay damages only where the court determines that it is impossible for the defendant to have offered more, from any source. *See Sun Pipe Line*, 655 A.2d at 120.

¶ 16 Fonner would have us focus on her insurance policy and the limits of that policy. However, the test is not whether what was offered was all that was available through an insurance policy. The test is whether Fonner, the defendant, was in a position to offer additional assets beyond the $50,000.00 contained in the Travelers policy. In *Berry*, we held that "a plaintiff shall not be awarded damages for delay pursuant to Pa.R.C.P. 238 ... when the court determines that, because of the defendant's indigency, the offer was **the full amount available for payment of the plaintiff's claim** and it was impossible for the defendant to have offered more." 502 A.2d at 722 (emphasis added). There was no suggestion in *Berry*, or in subsequent cases, that the examination of a defendant's alleged indigence is limited to a review of the defendant's insurance coverage. To the contrary, our cases make clear that the trial court is obligated to examine all sources of potential payment prior to concluding that a defendant may escape Rule 238 damages. *See Sun Pipe Line*, 655 A.2d 112; *Krysmalski*, 622 A.2d 298.

¶ 17 The trial court found that Travelers's conditional offer to pay its policy limits on behalf of Fonner was not a full offer of settlement by Fonner, as contemplated by Rule 238. The record supports this finding. Travelers's written offer to tender $50,000.00 on November 4, 1991, was conditioned upon "a complete release of our insured [Fonner]." After the Estate filed suit against Fonner and others, Travelers wrote, on August 5, 1993, that "our offer of policy limits, in the amount of $50.000.00 remains in effect on behalf of [Fonner]." It was not until October 19, 1994, that counsel for Fonner acknowl-

edged, in their letter to counsel for the Estate, that the survival of the Estate's potential rights of recovery against Tomsic Motors might require a release specially drawn to fit the circumstances. Fonner's representatives did not tender a proposed release form at that time but rather, indicated that they would draft a joint tortfeasors release for the Estate's review only if the Estate was "interested in partially settling this case on that basis." Without any tendered release form to review, the Estate reasonably believed that its execution of a joint tortfeasors release would have completely released Fonner and limited the Estate to proceed only with the case against the City of Washington and Penn-DOT.

¶ 18 The correspondence reviewed by the trial court established that the Estate made extensive efforts to obtain the primary insurance coverage proceeds from Fonner and Travelers without destroying the Estate's right to proceed against Tomsic, which held additional, excess liability coverage totaling $1,015,000.00. The Estate's decision to decline the $50,000.00 offer was reasonable, where the acceptance of the offer required the Estate to execute a general release, thereby jeopardizing its ability to proceed against Tomsic, insured by Motorists Mutual and Allstate. *See Brosius v. Lewisburg Craft Fair*, 383 Pa.Super. 454, 557 A.2d 27, 29 (1989) (general release executed in exchange for payment of insured's policy limits and which intended to release not only insured but all other parties from any and all future liability arising from vehicle accident held to support judgment on the pleadings in favor of all defendants).

¶ 19 Three years after making its initial contingent offer of October 31, 1991, Travelers indicated a willingness to draft a release that would release Travelers and Fonner "for any potential personal liability." This belated offer was never carried forward, no release was ever drafted, and this *hypothetical offer cannot serve as a basis for proscribing delay damages.*

¶ 20 Moreover, the trial court relied on the modified discharge order of the bankruptcy court that excluded from discharge "any applicable policy of liability insurance." Modification of Discharge Order of Court, 5/14/96, R.R. 139a–40a. The court found that Tomsic's nontendered excess coverage constituted an asset of Fonner to be considered in determining whether Fonner had tendered all available assets. We find no abuse of discretion in this finding. *See Krysmalski*, 622 A.2d at 307.

¶ 21 We recognize that the insurance coverage held by Allstate and Motorist Mutual were not direct assets of Fonner but rather, assets available to Tomsic in defense of any claims made by the Estate against it. On this record, at least $15,000.00 was available to be paid to the Estate by Allstate, conditioned only upon the prior payment by Fonner and Travelers of the primary coverage totaling $50,000.00. At the very least, there was $65,000.00 available for payment of the Plaintiff's claim shortly after the accident and even before suit was filed. We cannot say that the trial court's recognition of Fonner's ability to control the payment of the $15,000.00 held by Allstate constituted an abuse of discretion.

¶ 22 The Estate had communicated to Fonner's representatives the Estate's desire to proceed against Tomsic and Tomsic's excess liability coverage. All of the parties involved in the settlement negotiations were experienced in their field. Fonner has not contended on this appeal that she was unable to tender her coverage under the Travelers policy accompanied by a release document that would not have extinguished the Estate's rights against other defendants. Nor has Fonner argued that a suitable release had been drafted, tendered to the Estate, and rejected. In *Shellhamer v. Grey*, 359 Pa.Super. 499, 519 A.2d 462 (1986), we considered whether the trial court erred in rejecting a defendant's post-verdict petition to pay insurance proceeds into court. In reviewing the applicable law, we stated, in dicta:

> [I]t must be pointed out that the pretrial offer of settlement by the defendant, as authorized by the carrier, was conditional upon the plaintiff executing "releases" and "a certificate showing that the lawsuit ... ha[d] been settled and discontinued." Absent a condition upon which a party has the right to insist and to which the other party cannot reasonably object, such a tender has been considered invalid.

519 A.2d at 466–67. Fonner failed to establish her right to demand the execution of a release that would release all defendants in exchange for her tender of only the $50,000.00 policy limit, where it was known by Fonner or her representatives that additional assets remained available from the other defendants. Such an offer is invalid and was properly rejected by the Estate. *See id.* While it is true that the Estate was looking to a third party to collect additional assets, it is equally true that Fonner knew, or reasonably should have known, that her tender of her primary policy limits along with a general release, if executed by the Estate, would result in extinguishing the liability of herself, her insurer, and all other defendants. *See Brosius*, 557 A.2d at 29. On these facts, we conclude that the trial court did not abuse its discretion in finding that Fonner had not tendered the full amount available for payment of the Estate's claim.

■ ¶ 23 We hold that a plaintiff shall be awarded damages for delay pursuant to Pa.R.C.P. 238 after the date of the defendant's offer when the court determines that, in spite of the defendant's claimed indigence, the defendant is in a unique position to facilitate the plaintiff's access to other assets arising out of the same incident and, after demand, unreasonably refuses to do so. So long as the steps that an indigent or bankrupt defendant would take to facilitate such access will not expose that defendant to additional liability, that defendant must take whatever steps are necessary to assist the plaintiff materi-

ally in collecting such other assets. In this case Fonner could have readily tendered her primary policy limits without insisting on the Estate's execution of a general release of liability as to all parties. We find no error in the award of Rule 238 damages in this case. *See Sun Pipe Line*, 655 A.2d 112; *Krysmalski*, 622 A.2d 298.

¶ 24 Accordingly we will affirm the order of June 21, 1999, that denied Fonner's petition for reconsideration and assessed delay damages as set forth in the calculations contained in the Estate's Petition for Delay Damages, leading to the entry of final judgment on July 6, 1999.

¶ 25 Order awarding delay damages and entry of final judgment are both **AFFIRMED**.

¶ 26 KELLY, J. concurs in the result.