502 A.2d 717

**Theodore M. BERRY**

v.

**Anne M. ANDERSON, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 6, 1985.

Filed Jan. 3, 1986.

Dean B. Stewart, Jr., Norristown, for appellant.

Stephen M. Feldman, Philadelphia, for appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, ROWLEY, WIEAND, CIRILLO, OLSZEWSKI, BECK and TAMILIA, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

This is an appeal from an Order that appellant Anne M. Anderson pay delay damages to appellee Theodore M. Berry

in addition to compensatory damages awarded by a jury. We hold that the trial court erred in imposing delay damages after February 25, 1982 without first conducting an evidentiary hearing to ascertain the appellant's financial status from February 25, 1982 until the date of the verdict. For the purpose of the following discussion, we will assume that the facts stated in appellant's new matter are true and that she is indigent. Of course, appellant still bears the burden of proving those facts on remand.

On June 3, 1980, appellee Berry initiated a lawsuit against the appellant as a result of an automobile accident which left Berry partially paralyzed. On February 25, 1982, twenty-two months before trial, the appellant offered to settle the case for the full amount of her insurance policy—$100,000. Appellee rejected the offer. On December 15, 1983, following a five-day trial, a jury returned a verdict in favor of appellee for $2,000,000. Appellee then filed a motion to mold the verdict to add delay damages as provided for by Pa.R.C.P. 238 (Rule 238). The Rule states in part:

(a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court or the arbitrators appointed under the Arbitration Act of June 16, 1836, P.L. 715, as amended, 5 P.S. § 30 et seq., or the Health Care Services Malpractice Act of October 15, 1975, P.L. 390, 40 P.S. § 1303.101 et seq., shall

(1) add to the amount of compensatory damages in the award of the arbitrators, in the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict or decision;

(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action,

whichever is later, up to the date of the award, verdict or decision.

\* \* \* \* \* \*

(e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made.

In the motion, appellee argued that because appellant's offer of $100,000 was far less than the $2,000,000 verdict, appellant must pay an additional $528,000 in delay damages. Appellant answered the motion by admitting the facts alleged, but added in new matter that she could pay neither the amount of the jury verdict nor the delay damages because she was impoverished.[1] Appellee objected to the new matter on the grounds that the appellant's financial status was irrelevant to whether delay damages should be assessed. The trial court sustained appellee's objection, struck the new matter from appellant's answer, and granted the motion to mold the verdict, thus adding delay damages to the compensatory damages. It is from that order that this appeal is taken. We are presented with the question of whether Rule 238 mandates that delay damages be assessed against all persons, regardless of their ability to pay.

The appellee urges us to apply Rule 238 automatically, without regard to "balancing of equities" or "the reasonableness of the defendant's conduct." Appellee's Brief at 7. He contends that if we were to look beyond the literal language of the Rule, the result would be "totally unworkable"; the trial court would be required to inquire into the "personal wealth of the defendant" and "the equities of the

---

1. On December 6, 1983, appellant filed a petition for relief under Chapter 7 of the Bankruptcy Reform Act.

situation," thus contributing to the ponderousness of the judicial process. *Id.* To further support his position, appellee cites Pa.R.C.P. 127(b) which provides that "[w]hen the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Appellee's Brief at 9.

■ In making this assertion, appellee assumes that clear words remain free from ambiguity, no matter the situation to which they are applied. But two types of ambiguity exist: patent ambiguities, which are readily apparent; and latent ambiguities, which only become obvious upon application of seemingly clear words. The law of contracts recognizes that the plain language of a contract may become ambiguous when a party attempts to perform its obligation. When a latent ambiguity arises, the language is then open to interpretation. *Telex Corporation v. Balch,* 382 F.2d 211 (8th Cir.1967).

In the instant case, Rule 238 presents an example of a latent ambiguity. The Rule excuses defendants from paying delay damages only in a limited number of situations, all of which are enumerated in the Rule. But this clear language clouds over when applied to an indigent defendant. The Rule is silent on the matter of defendants who lack the funds to make an offer of settlement sufficient to escape the imposition of Rule 238 "delay" damages. Does this silence mean that an ability to pay is assumed or does it mean that financial status is irrelevant? Because the words of Rule 238 are not "clear and free from all ambiguity," Rule of Construction 127(b) does not aid us in interpreting the Rule, for clarity of language is a prerequisite to that section's applicability. We therefore must look to Rule 127(c):

> When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other

rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule.

To determine the Court's intention in promulgating Rule 238, we look first to the history of the Rule.

The Supreme Court adopted Rule 238 in 1978 based on a recommendation by the Civil Procedural Rules Committee. The Rules Committee reasoned that congestion in the courts, poor incentives for early settlement, and inadequate sanctions against defendants who provoked lengthy delays between the commencement of lawsuits and trial necessitated Rule 238:

> Statistics show that only 38 percent of these cases ever go to trial and only 25 percent ever go to verdict. Thirty-eight percent are settled without going to trial. Some are settled through pretrial conciliation techniques, but in too many cases meaningful negotiations commence only after a trial date is fixed or on the courthouse steps or in the courtroom, thus leading to delay in the disposition of cases and congestion in the courts. The present practice provides no incentive for early settlement.

8 Pa. Bulletin 2668 (1978). While these explanatory comments were not adopted by the Supreme Court as part of Rule 238, they disclose the problems the Rule was designed to alleviate.

In 1981, the Supreme Court was called upon to determine the constitutionality of Rule 238. After holding that the Rule was constitutional, the Court discussed the history and the purpose of the Rule:

> [Rule 238] clearly reflects a primary desire to encourage pre-trial settlement.... By tolling the running of interest, this provision demonstrates the prominent goal of fostering early settlement. Undeniably, this rule serves to compensate the plaintiff for the inability to utilize funds rightfully due him, but the basic aim of the rule is to alleviate delay in the disposition of cases, thereby lessening congestion in the courts.

*Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 59, 436 A.2d 147, 154 (1981), *appeal dismissed sub nom., Bucheit v. Laudenberger*, 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982).

Our Court has discussed Rule 238 when a verdict was entered against joint tortfeasors. In considering the purpose of the Rule, we noted that "[d]efendants are given an opportunity to protect themselves from exposure to prejudgment interest by making a reasonable offer of settlement in good faith and in a timely fashion." *Baciotti v. Simmons*, 346 Pa.Super. 23, 498 A.2d 1351 (1985).

Rule 238's primary function, then, is to facilitate early settlements. Two categories of defendants are penalized under the Rule: defendants who make no offer at all and defendants who make inadequate offers. The facts are undisputed that the appellant made an offer which was, in view of the verdict, woefully inadequate. The question that remains is whether Rule 238's goal of encouraging reasonable settlement offers in the nascent stages of lawsuits is met by penalizing a party incapable of making a "reasonable offer" as defined by the Rule. To resolve this question we must explore the consequences of the interpretation suggested by the appellee and that suggested by the appellant.

The appellee construes Rule 238's silence regarding a defendant's financial condition to mean that all defendants who fail to proffer reasonable terms of settlement must pay delay damages. Under such an interpretation, the appellant would have been required to offer $1,600,000 (with prompt cash payment) to avoid the added penalty. Appellant's offer of $100,000—which she asserts is the full amount of her available resources—could only have been looked at askance by the appellee, for delay damages alone imposed under Rule 238 exceeded the settlement offer by over $400,000.

We must ask, if we adopt the position advanced by the appellee, would we foster the clear cut goal of Rule 238 of promoting early settlement? If the appellant is indigent

and she offered the appellee everything she had, would the threat of a severe penalty cause her to offer more? Obviously not. Rather, the impetus that moved the appellant to offer what presumably constitutes all her finances would be eliminated; an inadequate offer, even one that represents all a defendant's valuable assets, would be treated as though no offer had been made at all. Such a result would do nothing more than indicate our brutal disregard for an individual's special circumstances.

By adopting the appellant's position, we would not penalize indigent defendants for offering the full amount of their available resources. And plaintiffs would be able to view settlement negotiations with an eye toward the financial capabilities of the defendant. Such plaintiffs may be loath to undertake the time, expense, and emotional drain of litigation if an impecunious defendant is all that awaits them at the end of their labors.

While the literal language of the Rule fails to specify that a defendant who makes a reasonable settlement offer must first possess the assets to satisfy the offer, logic and common sense supply that prerequisite. A result in which a defendant would be required to make an offer he could not possibly pay would neither promote the goal of Rule 238 nor generate respect for the judicial system. Once delay damages were assessed, how could they be collected? Punishing a person for failing to do that of which he is incapable portends an impossibility for that person and an unreasonable result, both of which violate Rule of Construction 128.

Rule of Construction 128 provides that "In ascertaining the intention of the Supreme Court in promulgation of a rule, the courts may be guided by the following presumptions among others: (a) That the Supreme Court does not intend a result that is absurd, impossible of execution or unreasonable...." This provision permits a court to look beyond the language of a rule when a literal reading would

produce an absurd, impossible, or unreasonable outcome. *Commonwealth v. Creamer v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812, *on remand*, 26 Pa.Commw. 399, 365 A.2d 442 (1974). A reading of Rule 238 that would require an indigent defendant to offer what he does not have violates the presumption of Rule 128 against results that are impossible of execution.

This presumption against impossible results runs to other areas of the law. For example, Section 1106 of the Crimes Code permits the trial court to order a criminal defendant to pay restitution. *See* 18 Pa.C.S. § 1106. The statute fails to state that a defendant must be able to pay the amount imposed by the court, but that condition has been implied. In *Commonwealth v. Fuqua*, 267 Pa.Super. 504, 407 A.2d 24 (1979), our Court held that before a defendant may be ordered to pay restitution, the court must consider "the extent of the injury suffered, the fact that the defendant's action caused the injury and that he will be able to pay for it, and the type of payment—lump sum or installment—that will best serve the needs of the victim and the capabilities of the defendant." (Citations omitted.) *Id.*, 267 Pa.Superior Ct. at 510, 407 A.2d at 27. Thus, despite the statute's silence, the sentencing court must consider a defendant's ability to pay before it demands restitution from him. *See Commonwealth v. Mourar*, 349 Pa.Super. ——, 504 A.2d 197 (1986) and *Commonwealth v. Gaskin*, 325 Pa.Super. 349, 472 A.2d 1154 (1983).

Similar principles apply when a trier of fact is called upon to award punitive damages. The RESTATEMENT (SECOND) OF TORTS states that, "The wealth of a defendant is also relevant, since the purposes of exemplary damages are to punish for a past event and to prevent future offenses, and the degree of punishment or deterrence resulting from a judgment is to some extent in proportion to the means of the guilty person." RESTATEMENT (SECOND) OF TORTS, § 908(e) (1979). Courts recognize that punitive damages, to effectively deter reprehensible conduct, must

be tailored to an individual's ability to pay. The California Court of Appeals has stated,

> The purpose of punitive damages is to punish the defendant to make an example of him, and the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective, from which it also follows that the poorer the wrongdoing defendant the smaller the award of punitive damages need be.

*Zhadan v. Downtown Los Angeles Motor Distributors, Inc.,* 100 Cal.App.3d 821, 161 Cal.Rptr. 225 (1980).

■ To avoid demanding the impossible, then, we must first discern a defendant's ability to make an offer that would have been sufficient to stay the operation of Rule 238. Such a determination will not only yield more equitable results, it will also permit the application of Rule 238 under circumstances in which the Supreme Court intended it to apply: to a defendant with sufficient assets to offer a reasonable settlement figure, but who, for whatever reason, chose not to make such an offer. The true purpose of the Rule will then be executed. "It is fundamental that a rule of law should not be applied where its application fails to serve the purpose for which it was designed." *Commonwealth v. Beatty,* 500 Pa. 284, 291, 455 A.2d 1194, 1198 (1983). We hold that a plaintiff shall not be awarded damages for delay pursuant to Pa.R.C.P. 238 after the date of the defendant's offer when the court determines that, because of the defendant's indigency, the offer was the full amount available for payment of the plaintiff's claim and it was impossible for the defendant to have offered more.

Appellant also raises a constitutional argument, which we do not reach by virtue of our decision that Rule 238 does not apply to an indigent defendant under the facts presented to us. We therefore do not address the issue of Rule 238's constitutionality.

Reversed and remanded for an evidentiary hearing. Jurisdiction is relinquished.