530 A.2d 1334

Gilda MECCA, Administratrix of the Estate of Elizabeth
Hope Mecca, Deceased

v.

Frank LUKASIK and Antoinette Lukasik, his wife,
Administrators of the Estate of Anthony Lukasik,
Deceased, Appellants.

Joseph HAFICH and Charlotte Hafich, his wife, Administra-
tors of the Estate of Jody Hafich, deceased

v.

Frank LUKASIK and Antoinette Lukasik, his wife,
Administrators of the Estate of Anthony Lukasik,
deceased, Appellants.

Rodney CIZIK and Joan Cizik, his wife, Administrators of
the Estate of Michelle Cizik, Deceased

v.

Frank LUKASIK and Antoinette Lukasik, his wife,
Administrators of the Estate of Anthony Lukasik,
Deceased, Appellants.

Arthur J. THOMAS, Sr., and Hannah Thomas, Administrators
of Estate of David J. Thomas, Deceased

v.

Frank LUKASIK and Antoinette Lukasik, his wife,
Administrators of the Estate of Anthony Lukasik,
Deceased, Appellants.

Lloyd CHERESKO and Annette Cheresko, his wife, Administra-
tors of the Estate of Michael Cheresko, deceased, and Lloyd
Cheresko and Annette Cheresko, his wife, individually

v.

Frank LUKASIK and Antoinette Lukasik, his wife,
Administrators of the Estate of Anthony Lukasik,
Deceased, Appellants.

Superior Court of Pennsylvania.

Argued Feb. 25, 1987.

Filed July 6, 1987.

Reargument Denied Aug. 28, 1987.

152

James A. Doherty, Scranton, for appellants.

Robert W. Munley, Scranton, for appellees.

Before CIRILLO, President Judge, and TAMILIA and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from judgment entered on behalf of the estates of five deceased teenagers [1] who were killed when the car in which they were passengers plummeted from a

---

**1.** Two other teens were in the car and met the same fate, but they are not represented as parties to this lawsuit.

roadway and landed some 200 feet below. Plaintiffs are the parent-administrators of their children's estates. Defendant-appellants are the parent-administrators of the estate of Anthony Lukasik, also a teenager who the jury found was the driver of the car, and who died the night of the accident.

After a jury trial, verdicts were returned in an average amount of $3.5 million for each of the plaintiffs. Following the denial of timely post-trial motions, this appeal followed. Appellants raise numerous allegations of error which we have carefully considered.

The evidence presented by the plaintiffs at trial established that on the evening of March 6, 1981, Anthony Lukasik borrowed his sister's car, a 1976 Chrysler Cordoba with a vinyl roof. He drove to Idle Hour Lanes, a bowling alley, in Dickson City, Lackawanna County. From there he drove seven other teenagers to a bonfire party. Around 11 p.m., those present began to arrange themselves in cars in order to go home. Jill Mecca, whose younger sister, Lisa Mecca, died that night, had originally been in the Lukasik vehicle, when, at the last minute, Lisa approached the car and asked Jill to trade places with her. Lisa's boyfriend was already in the ill-fated vehicle. Jill testified that Anthony Lukasik was in the driver's seat during this exchange. Eight teenagers were in the Lukasik vehicle and all died when, minutes later, traveling at a high rate of speed, it veered from side to side on a rural road and plunged through the guard rail into the chasm below. There were no eyewitnesses to the accident and details as to speed and measurement were presented in plaintiffs' case by an accident reconstruction expert and by various law enforcement personnel who investigated the scene. Those who arrived first at the scene of the accident either were not able to determine or did not take note of who was behind the wheel. That Anthony Lukasik was the driver at the time of the accident was decided by the jury based on the aforementioned testimony by Jill Mecca, and by that of Edward Smith and James Greavy, who stated that when the Lukasik car left the party, Anthony was the driver.

The first allegation of error which defendant-appellants argued vigorously and relentlessly during the trial and now on appeal concerns a statement which Jill Mecca made during a grand jury investigation. Appellants contend that this remark, which Jill attributed to Michelle Cizik, Anthony Lukasik's girlfriend and, one of the deceased teenagers, should have been allowed into evidence. During defense counsel's cross-examination of Jill Mecca, he asked her, "Now, when you got out of that car, did you hear Michelle Cizik ask Tony Lukasik if she could drive the car?" Counsel for the plaintiffs objected and a sidebar discussion ensued.[2]

The appellants sought to enter the Michelle Cizik remark into evidence as establishing, not that Michelle was the driver, but only that Jill overheard Michelle's remark. However, appellants claim that the identity of the driver of the vehicle was the key issue in the case, highlighting the meaning which they hoped the jury would give to the offered statement. Appellant then offered other rationales in an attempt to extirpate the statement from its hearsay nature. The trial court was not persuaded and refused to admit the statement as inadmissible hearsay.

On appeal, appellants assert that the remark was a statement against a party interest or an admission, which would render it as an exception to the hearsay rule. However, the offered statement had neither minimal indicia of

**2.** Defense counsel related that he sought this information to disclose what Jill Mecca testified before a grand jury regarding a comment she heard Michelle Cizik make before the Lukasik car took off on its fatal journey, to-wit: I heard Michelle joking around, she goes, 'Oh, I'll drive.'" During a later sidebar conference with the trial court concerning appellants' repeated offer of this testimony, one of the plaintiffs' attorneys expanded the context of this statement.

Your Honor, from the same transcript, where Mr. Doherty, [counsel for defendants] left off, Your Honor, the next question was, she was told to speak up. She said, "I heard Michelle joking around; she said, oh, I'll drive. She was just joking around though. [Question, by a grand juror:] "How do you know she was just joking around." Answer, "Because she started laughing." Then one of the jurors asked about a license. The witness Mecca said, "No. That's why I knew it was just a joke."

reliability, since as Jill related it, it was said in jest, nor was it capable of cross-examination, since the declarant was deceased. As the court explained in a case cited by appellants as authority, *DeFrancesco v. Western Pennsylvania Water Co.*, 329 Pa. Superior Ct. 508, 522–3, 478 A.2d 1295, 1302 (1984),

> Hearsay exceptions have historically been justified under two divergent theories. The first and most common justification for the admission of hearsay statements is that such statements exhibit a high degree of reliability, so that the denial of the right to cross-examination is minimized. Thus, a jumble of hearsay exceptions have sprung up on the basis that the circumstances surrounding the statement guarantee the requisite measure of reliability.
>
> There exists, however, a very narrow second category of hearsay exception which does not deal with reliability at all. Instead, out-of-court statements may be admitted regardless of trustworthiness where the right to cross-examination is preserved. This category originates with the case of party admissions. The reason for the admission of a party's statement is not that it is especially reliable, but rather, because the right to cross-examination is not lost; *i.e.,* the party is present to take the stand and explain his statement. *See* McCORMICK ON EVIDENCE § 262 (2d ed. 1972); 4 WIGMORE ON EVIDENCE § 1048 (Chadbourne rev. 1972). Thus, the hearsay rule is not a ground for objection when a party's extrajudicial opinions are offered against him, although it remains a ground for objection when a party attempts to offer his extrajudicial assertions in his own behalf. *See* 4 WIGMORE ON EVIDENCE, *supra.* The probative value of such statements derives, therefore, from satisfaction of the hearsay rule via retention of the right to cross-examination, rather than from any independent indicia of reliability.

The proffered statement was hearsay which did not fall within any exception. It was not a statement against

interest or an admission as in *Salvitti v. Throppe*, 343 Pa. 642, 23 A.2d 445 (1942), in which plaintiffs properly testified as to defendant's statement that the accident in question was his fault. Absent any substantiating behavior, Michelle Cizik's joking comment reveals nothing about her conjectured offer to drive the Lukasik car, as appellants attempt to portray it. Therefore, appellants are not entitled to a judgment n.o.v., nor to a new trial because of the trial court's refusal to permit the Michelle Cizik remark into evidence.

■ The next issue concerns two newspaper articles which appeared during the trial in local papers. Defense counsel requested a mistrial or at least a polling of the jury to determine whether they had read the articles which reported Anthony Lukasik as the driver of the vehicle in the accident. Insurance coverage of the vehicle involved was mentioned in one of the articles. The defendant, Mr. Frank Lukasik, administrator, related however, to the court and all counsel, in chambers, that he heard three jurors referring to one of the articles and the fact that, once they recognized it as pertaining to the trial, they closed the paper. Nevertheless, appellants maintain that these jurors could have been influenced by mention of insurance companies in the articles in light of the large verdicts which they rendered. Appellants contend that the jury would not have awarded such generous verdicts if they had thought the Lukasiks were going to have to pay them. The action, if any, to be taken in such a situation rests in the discretion of the trial court. *Nicholson v. Garris*, 418 Pa. 146, 210 A.2d 164 (1965). In denying the defense motion at trial, the court emphasized its instructions to the jury after it had been sworn that they must consider only the evidence presented at trial. Before the jury retired, the court instructed the jurors to consider only the evidence in making its decision and nothing extraneous to the evidence. And, as the court stated in its opinion, Mr. Lukasik's report of the overheard conversation supported the court's conclusion that the jurors were aware of their role and were taking it seriously in closing the newspaper upon seeing reference to

the trial. There was no evidence that the jurors had read about the insurance in the article but merely that as soon as they read that the article dealt with the case they closed the paper.

Appellants rely on cases in which the fact of insurance was brought to the attention of the jury at trial. At most, what was involved in the instant case was reference in one newspaper article as to the insurance policy limits involved but no evidence the jurors read that portion of the article dealing with insurance. This situation does not violate the well-recognized rule that evidence in a personal injury action which informs the jury that the defendant is insured against liability is inadmissible and an improper subject of cross-examination. *See Price v. Yellow Cab Co.*, 443 Pa. 56, 63, 278 A.2d 161, 166 (1971) and cases cited therein. And, while the reason behind the rule is "the assumption that a knowledge of the fact of insurance against liability will motivate the jury to be reckless in awarding damages to be paid, not by the defendant, but by a supposedly well-pursed and heartless insurance company that has already been paid for taking the risk", II Wigmore on Evidence § 282a, at 133–34 (3d ed. 1940), it does not necessarily follow that under the facts of this case the large verdicts resulted from one of the articles that appeared during the trial. The trial court, in weighing all factors on balance in determining the least prejudicial path in light of the information before it, was correct in its ruling refusing a mistrial.

Appellants' next allegation of error involved the testimony of Dr. George Reavy as to the loss of earning power of the deceased adolescents. Dr. Reavy was presented as an economist and he projected certain dollar amount lost earnings based on the planned careers of the minors to which the respective parents testified. He included in his computations the children's life expectancies, minus a maintenance figure plus fringe benefits figures. Appellants argue that this testimony of the economist was speculative, citing *Pratt v. Stein*, 298 Pa. Superior Ct. 92, 444 A.2d 674 (1982),

in which our Court in the context of the calculation of an injured employee's wage loss from the date of the accident until the time of trial, repeated the well-established principle that the law requires not merely conjecture, but rather sufficient data from which damages can be assessed with reasonable certainty.

In all survival actions, damages are to be properly measured for loss of earning power less personal maintenance expenses from the time of death through a decedent's estimated working life span. *Incollingo v. Ewing*, 444 Pa. 263, 299, 282 A.2d 206, 229 (1971). And, while expert testimony is not required to show loss of earning capacity, either party in a negligence action is entitled to introduce expert or other evidence to establish or refute actual expected future earning capacity of a particular plaintiff. *Fish v. Gosnell*, 316 Pa. Superior Ct. 565, 463 A.2d 1042 (1983). For example, in *McClinton v. White*, 497 Pa. 610, 444 A.2d 85 (1982), in which the issue concerned the amount to be deducted from an award of damages as personal maintenance, the Supreme Court related the procedure employed by the plaintiffs in presenting their case on future lost earnings damages to the jury. The expert, who was a professor of economics, calculated the earning potential of the two decedents, who were ages 16 and 18 at the time of their death in an automobile accident, both as college graduates and as high school graduates. He based these calculations on testimony of the decedent's interests, talents and ambitions. Thus, as in this case, experts are commonly used by plaintiffs to present their case regarding the future lost earnings.

Dr. Reavy, relying partly on figures from the United States Bureau of the Census calculations for earnings data, discussed each of the plaintiff's possible earning capacities in light of the testimony already of record regarding each of the plaintiffs. As for Michelle Cizik and Jodi Hafich, Dr. Reavy testified that future wage loss of all high school and college graduates fall in the range of $533,023 and $664,358 respectively. Both girls had expected to attend college,

according to their mothers. Regarding Elizabeth Mecca, who planned to become a doctor, Dr. Reavy presented future wage loss of high school ($529,920) college ($671,572) and medical school graduates ($5,197,444). David Thomas was described by his mother as wanting to go to the Air Force or to learn air conditioning repair work. Dr. Reavy offered future wage loss of high school graduates in the amount of $836,766, and for all white males in the amount of $1,020,538. With regard to Michael Cheresko, his father testified that Michael wanted to be a mechanic like his father. Future wage loss of a mechanic was presented in Dr. Reavy's analysis for Michael Cheresko in the amount of $972,000.

■ Appellants contend that there was not a sufficient basis to justify such calculations to infer that the deceased teenagers would attend college, or in Elizabeth Mecca's case, become a physician. We disagree.

As the Supreme Court has explained,
[a]ll that the law requires is that

"(a) claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough." *Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 453–54, 197 A.2d 721, 727 (1964). *See also Small v. Flock,* 407 Pa. 148, 180 A.2d 59 (1962); *Getz v. Freed,* 377 Pa. 480, 105 A.2d 102 (1954). "If the facts afford a reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation." *Western Show Co., Inc. v. Mix,* 308 Pa. 215, 162 A. 667 (1932). *Kaczkowski v. Bolubasz,* 491 Pa. 561, 567, 421 A.2d 1027, 1030 (1980).

It is particularly difficult to project future wage loss of a deceased child, as in this case, but this item of damages had not been denied by any court because of the problems of the youth involved. *Prince v. Adams,* 229 Pa. Superior Ct. 150, 324 A.2d 358 (1974). The testimony on which Dr. Reavy based his projections was more than the dreams of each teenager as supported by his or her parents at trial. Testi-

mony was also given by the parents concerning their own stations in life and that of the respective siblings. *Slavin v. Gardner*, 274 Pa. Superior Ct. 192, 418 A.2d 361 (1979). In the case of Lisa Mecca, whose projections included medical school as a possibility, one sister was already in medical school and one was in pharmacy school. As for her, a proper foundation was laid. For Jodi Hafich, although her academic performance as a high school freshman was not good, nevertheless, her sister had attended college, and Mrs. Hafich testified that Jodi wanted the same for herself. Michelle Cizik was described by her mother as wanting to become a geologist. An older brother of Michelle's attended college. The two male decedents, David Thomas and Michael Cheresko, were portrayed as wanting to enter air conditioning repair work or the Air Force and to become a mechanic, respectively. These foundations for Dr. Reavy's projections on the potential earning capacities of David Thomas and Michael Cheresko respectively, cannot be said to be unreasonable given David's two sisters who had attended, although not completed, college, and considering that Michael's father was a mechanic.

The jury had a range of future wage loss amounts from which to choose based on their own findings from the background testimony which they heard at trial. The amounts which the jury chose to award were based on credible evidence which is properly within their fact-finding domain. *Richardson v. LaBuz*, 81 Pa. Commonwealth Ct. 436, 474 A.2d 1181 (1984). Relying on the inquiry of case law as to the reasonableness of the bases for the calculations involved, *Kaczkowski v. Bolubasz, supra,* we find that the testimony of Dr. Reavy constituted proper evidence for the jury's consideration.[3]

Appellants allege that the verdicts [4] rendered by the jury in this case were so excessive as to shock the Court's sense

---

3. The related contention of appellants as to the court's instructions to the jury concerning Dr. Reavy's testimony is without merit.

4. Each plaintiff was awarded damages of $1,000,000 under the Survival Act, and approximately $2,500,000 plus an amount representing funeral and related expenses under the Wrongful Death Act.

of justice and were clearly based on prejudice, passion and the aforementioned alleged knowledge that any verdict would be paid by an insurance company.

The grant or refusal of a new trial because of the excessiveness of the verdict is within the discretion of the trial court. *Hall v. George*, 403 Pa. 563, 170 A.2d 367 (1961). This court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. *Kravinsky v. Glover*, 263 Pa. Superior Ct. 8, 396 A.2d 1349 (1979). We begin with the premise that large verdicts are not necessarily excessive verdicts. Each case is unique and dependent on its own special circumstances and a court should apply only those factors which it finds to be relevant in determining whether or not the verdict is excessive. *Mineo v. Tancini*, 349 Pa. Superior Ct. 115, 502 A.2d 1300 (1986). A court may consider the following factors, *inter alia:*

> (1) the severity of the injury; (2) whether the plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the plaintiff (and, herein, the court pointed out that where the injury is manifested by broken bones, disfigurement, loss of consciousness, or other objective evidence, the courts have counted this in favor of sustaining a verdict); (3) whether the injury will affect the plaintiff permanently; (4) whether the plaintiff can continue with his or her employment; (5) the size of the plaintiff's out-of-pocket expenses; and (6) the amount plaintiff demanded in the original complaint.
>
> *Kemp v. Philadelphia Transportation Co.*, 239 Pa.Superior Ct. 379, 361 A.2d 362 (1976).

Of course, the first four factors are answered in the instant case with death as the ultimate injury. Appellants argue that the excessiveness of the verdict is apparent in that plaintiffs' decedents were high school students who were killed instantly, had no work record, no medical care, and whose administrators had evaluated their cases at a much lower amount than determined by the verdict. It is one

thing to reduce a large verdict of a verdict winner for his failure to require medical care or wage loss when the plaintiff is employable and survives an injury; it is quite different when the reason a deceased has no medical expenses or work record is that he or she has been killed and was too young to earn a wage of any significance before death. Thus, the factor pertaining to out-of-pocket expenses is not relevant. As for appellant's argument that we consider plaintiffs' willingness to settle pre-trial for a much less sum is not proper in our review of a verdict for excessiveness. This Court, in an opinion by the Honorable Justin M. Johnson, *Ammon v. Arnold Pontiac-GMC, Inc.*, 361 Pa. Superior Ct. 409, 522 A.2d 647 (1987), recently held that settlement discussion amounts were an improper consideration in a court's determination of whether a verdict is excessive since to do so would discourage the settlement of disputes. "Plaintiffs will be dissuaded from making conservative settlement demands if they know that such demands will be used against them at a later stage in the proceedings." *Id.*, 361 Pa.Superior Ct. at 415, 522 A.2d at 650.

The question here is on what basis can we hold that damages in any amount for a teenager killed by another's negligence is excessive? If a jury determines that a certain amount is, in its judgment, justifiable, on what basis can this kind of verdict be overturned when there is no evidence of passion, prejudice or recklessness displayed on the part of the jury. We find no basis to do so. Damages for wrongful death are the loss of decedent's life and the loss to his or her family. *Slaseman v. Myers*, 309 Pa. Superior Ct. 537, 455 A.2d 1213 (1983). The measure of damages in survival actions is the decedent's pain and suffering and loss of gross earning power from the date of injury until death, and loss of earning power, from time of death through his estimated working life-span. *Krock v. Chroust*, 330 Pa. Superior Ct. 108, 478 A.2d 1376 (1984). The jury arrived at the within verdicts based on testimony which they heard pertaining to those various items of

damages.  We cannot say in law or fact that our sense of justice is shocked by the within verdicts.

■ Appellants complain that Dr. David Schorr, who was plaintiffs' accident reconstruction expert, was erroneously allowed to testify at trial since a report which was provided to appellants and dated April 23, 1982, was incomplete and did not contain any calculations or measurements.  Dr. Schorr's report estimated that the Lukasik vehicle had attained an estimated speed of 75–85 mph at the time it left the roadway and that this was a reasonable approximation of the vehicle's speed considering the nature of the impact. Appellants had access to Mr. Schorr for questioning prior to trial and cannot now complain as to the inadequacy of the initial report when they chose not to depose him.  They were provided with a supplemental report with the same estimated calculations, and with a police report including the measurements of the investigating officers.  This is clearly not a violation of the discovery rules, Pa.R.C.P. 4003.5 since appellants cannot claim they were surprised by Dr. Schorr's testimony.  *See Mapp v. Dube*, 330 Pa. Superior Ct. 284, 479 A.2d 553 (1984).[5]

Appellants claim that delay damages pursuant to Pa.R.

**5.** Appellants assert a violation of the discovery rules in the that measurements taken by Officer Anthony Merenich were not provided to appellants.  They allege error in his testifying to those measurements at trial.  Corporal Mcrenich's measurements were the same as those timely provided to appellants in the police report and because the Corporal was not presented as an expert witness, but merely in his capacity as one of the first investigating officers at the scene of the accident.  As such, Rule 4003.5 governing discovery of expert witnesses is inapplicable.  We find no error also in Officer Neal Furiosi's testifying to measurements of the accident scene which he himself did not take.  They were taken under his direct supervision and control and coincided with his familiarity with the scene.

Nor did the failure of appellants' to receive interrogatories in Michael Cheresko's case render testimony inadmissible as to Cheresko.  The court did not err in refusing appellants' request.  Even if one of these contentions could be considered as error, an erroneous trial ruling must also be harmful to the complaining party before reversal is required.  *Williams v. McClain*, 513 Pa. 300, 520 A.2d 1374 (1987). This is not the situation herein.

C.P. 238 were erroneously granted in this case.[6] Contrary to appellees' assertion that appellants waived this issue for failure to file their objection timely, we find that the objection was properly preserved by the exception that "there was no basis to make any offer over and above the insurance limits of $35,000.00." Appellants' argument on appeal is that delay damages should not have been assessed against them where the insurance policy limits of $35,000 had been offered two and one-half years prior to trial and there were no collectible assets of the defendant's estate.[7]

The purpose of Rule 238 is to facilitate early settlements in cases involving bodily injury, death or property damage. Thus, if a defendant at any time prior to trial makes a written offer of settlement, but the offer is not accepted by plaintiffs ($35,000 was offered, but not accepted in this case), and plaintiffs do not recover more than 125% of the offer, delay damages will not be awarded. (In this case, plaintiffs recovered many times over and above the offered amount.) Therefore, following the Rule in blind fashion, delay damages would be automatically awarded.

6. Recently, the Pennsylvania Supreme Court suspended the operation of the mandatory provisions of Rule 238 and directed a post-trial procedure to determine fault for delay. *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986). However, this new hearing procedure is to be applied prospectively in cases in which appellants assert that Rule 238 offends due process by failing to provide a forum to assess fault for delay. *Morgan v. Monessen Southwestern Railway Co.,* 513 Pa. 86, 98, 518 A.2d 1171, 1177 (1986); *Bolus v. United Penn Bank,* 363 Pa.Superior Ct. 247, 525 A.2d 1215 (1987). Appellants have not asserted their attack on Rule 238 in this manner.

7. Wrongful Death Act.—Delay damages were awarded, thus, from February 28, 1983 to June 13, 1985. Mecca—$568,647.57 for total verdict of $3,054,352.57; Ciziks—$582,680.37 for total verdict of $3,070,146.37; Thomas—$568,563.38 for a total verdict of $3,053,920.38; Cheresko—$565,875.70 for total verdict of $3,051,370.70; Hafich—$582,414.74 for total verdict of $3,068,746.74.

Survival Act—Delay damages were awarded as follows: Mecca—$227,623.28 for total verdict of $1,222,623.28; Cizik—$233,075.33 for total verdict of $1,228,075.33; Thomas—$227,623.28 for total verdict of $1,222,623.28; Cheresko—$226,532.87 for total verdict of $1,221.532.87; Hafich—$233,075.33 for a total verdict of $1,228,075.33.

■ However, recent refinements of Rule 238 lead us to conclude that a hearing is required in the court below to determine the Rule's applicability here. In *Berry v. Anderson*, 348 Pa. Superior Ct. 618, 502 A.2d 717 (1986) this Court, sitting *en banc*, considered the applicability of Rule 238 damages in a case where a defendant was clearly incapable of offering an amount in settlement which could stay the operation of the Rule. Rule 238 penalizes defendants who make no offer at all and those who make inadequate offers, with inadequacy measured by comparison of the offered amount with the actual verdict. The amount which defendant Anderson would have had to offer in the *Berry* case *supra*, to avoid delay damages was $1,600,000. The amount of the offer was $100,000, which appellant. Anderson asserted was the full amount of her resources. In *Berry*, this court, questioned how the purpose of Rule 238 to encourage settlement was served by penalizing a defendant who could not possibly pay the amount she was required to offer. The Court, therefore, remanded the case for an evidentiary hearing to determine the defendant's ability to make an offer that would have been sufficient to stay the operation of Rule 238. This must also be done in this case.

The trial court states summarily in its opinion that *Berry* is factually distinguishable from this case. Appellees claim that funds in the Estate of Anthony Lukasik were available, but not offered, thus removing this case from the ambit of *Berry*. It is necessary that the trial court make specific findings to determine whether, following the *Berry* principle, appellees are, in fact, entitled to delay damages. We cannot rely on unsupported allegations in parties' briefs and an evidentiary hearing is ordered.

■ One of defendant's claims in this case is that the lower court erred in not allowing evidence of the character of their son, Anthony, who the jury found drove the death car. The lower court was correct in this ruling since the parents, the defendants here and administrators of their son's estate were making no claims for damages.

██ Appellants allege error on the part of the trial judge in precluding defense inquiry of Dr. Disilvio the pathologist that all plaintiffs and defendant had died of identical injuries. This allegation is frivolous in that, although appellants' attorney was not permitted to pursue the inquiry at the point in trial cited in appellants' brief, earlier in the testimony of Mr. Sweeny, the coroner, the identical question was asked and answered. Thus:

Q. (by Mr. Doherty): Mr. Sweeny, so I'm correct in stating then, that all eight high school students died from the same type of injury?

A. (By Mr. Sweeny): Well, some had various different fractures; however, the immediate cause on all eight was directly skull and internal injuries, on all eight victims.

Thus, although Dr. Disilvio, the pathologist, was unable and unwilling to answer the same question affirmatively, owing to his superficial review of the cases, the facts which counsel sought to elicit were earlier presented to the jury through Mr. Sweeny. The court committed no error in precluding counsel's inquiry of Dr. Disilvo.

██ Appellants objected to Edward Smith's description of the Lukasik vehicle as "tearing out" of the party when it departed. Appellants requested that a mistrial be declared because there was no competent evidence of the speed of the Lukasik vehicle as it left the party. The court, instead, gave a cautionary instruction to the jury that they should disregard the witness's statement as non-responsive. This instruction was sufficient to cure any prejudice to appellants.

We now turn our attention to appellants' ten remaining averments of trial court error in its instructions to the jury prior to deliberations. We will first consider appellants' contentions as to erroneous instructions that were delivered over appellants' objections. It is settled that

[i]n reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against

the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party. (citations omitted.) *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 231, 489 A.2d 1291, 1305 (1985).

Appellants claim that there was insufficient testimony to warrant instructions from the court that the jury could infer that Anthony Lukasik was the driver of the vehicle at the time of the accident. Appellants also assert error in the court's instructions that the jury could find that the driver was negligent where no eyewitness testimony justified such a charge. The challenged portion of the charge reads as follows.

You cannot surmise or guess as to whether the Defendant/Decedent, Anthony Lukasik, was the driver of the vehicle at the time of the accident, or whether he was negligent in the operation of the vehicle. You must decide whether or not Anthony Lukasik was the driver from the credible evidence that has been presented in this case, and from the fact that Mr. Lukasik was seen to enter the car and take the driver's seat a short time before the accident, you may infer that he was the driver.

Now, Members of the Jury, the Pennsylvania Motor Vehicle Code regulates the way and manner in which automobiles are driven on our highways and roads. Now, under the law in Pennsylvania, if anyone violates the Motor Vehicle Code, that person is considered to be negligent, as a matter of law. And I want to cite to you a portion of the Motor Vehicle Code. And if you, in your determination, find from the evidence that the Decedent/Defendant, Anthony Lukasik, violated the Motor Vehicle Code, then, Mr. Lukasik is deemed to have been negligent.

I must caution you, before you answer the question of the Plaintiffs' right to recover, if you have found negligence by the Defendant/Decedent, Mr. Lukasik, you

must also determine whether the negligence was a substantial factor in bringing about the Plaintiffs' harm.

Now, the Motor Vehicle Code provides that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions, and having a regard for the actual and potential hazards then existing. Nor, shall it be driven at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead.

Now, consistent with what I have just read, every person shall drive at a safe and appropriate speed, when approaching and going around a curve, when approaching a hill, a crest, when traveling upon any narrow or winding roadway, or when any special hazards exist, with respect to pedestrians or other traffic, by reason of weather or other highway conditions.

I have mentioned assured clear distance ahead. Now, that rule, as applied in darkness, requires a driver to operate his vehicle so that he can always stop his automobile within the range of his headlights. As far as his headlights shine, he must be able to stop his car within the distance. Now, the unexplained violation of the statute, which results in injury to a person or property, constitutes negligence, as a matter of law. And the driver has the burden of proving that an alleged violation was excusable or justified under the circumstances.

When the driver's vehicle leaves a highway, and causes injury and damage, Members of the Jury, you can infer that the driver was negligent, and that the driver then has the burden of exculpating himself, by an acceptable explanation, that the accident occurred through no fault of his own. Now, in the ordinary course of the events, an automobile does not depart from the highway and then crash if the driver is using proper care; that is, the driver is called upon to show how, consistent with due care, how his car crashed.

Our review of the charge in its entirety against the background of the evidence presented convinces us that it was

properly given as to these two objections. Sufficient testimony was presented by several witnesses as to Anthony Lukasik driving his sister's car at all times during the evening, including the time of the car's departure from the party just prior to the accident. The jury was properly instructed that it could, but not must, infer that Anthony Lukasik was driving at the time of the accident itself. As for the instruction as to his negligence in driving, the jury could properly infer that on a country road, on a clear, dry night, that the driver of a car estimated to have left a roadway at a speed in excess of 72 miles per hour, did so negligently.

■ Appellants next assert that the court erroneously charged the jury that it could award damages for pain and suffering.

The charge states:

[t]he plaintiff would also be entitled to be awarded such an amount as you believe, again in your considered discretion, that will fairly and adequately compensate for the mental and physical pain and suffering and inconvenience that a decedent endured from the moment of the accident until the moment of death.

Appellants claim that Dr. Schorr's testimony indicated that the decedents lost consciousness upon striking their heads on the roof of the car as it left the roadway. In all likelihood, appellants maintain, the decedents suffered no pain as a result of the accident. There is no support for such a conclusion in the record. As reviewed by appellees, the evidence showed that the Lukasik vehicle first struck 36 feet of the easterly guardrail, crossed the roadway diagonally, a distance of 146 feet before striking the westerly guardrail, became airborne and traveled 2.1 seconds in the air for 211 feet, before impacting with the ground. While there can be no recovery for pain and suffering in a survival action where a decedent is killed instantaneously, in this case death was something less then instantaneous. And absent support in the record for appellants' claim that the occupants of the car were unconscious as it left the

roadway, the court correctly charged on pain and suffering. *In re Consolidation Coal Co.,* 296 F.Supp. 837 (W.D.Pa. 1969).

Seven of appellants' requested instructions were refused by the trial court, which refusal is now claimed as error by appellants. These requested points included:

1. Mere happening of an accident does not establish negligence;

2. Negligence against a defendant could not be shown by circumstances merely consistent with its existence;

3. Circumstantial evidence requires substantial proof as to what happened at the moment of the accident;

4. Mere happening of an accident does not establish negligence, and at such times accidents are unavoidable;

5. Damages could not be awarded absent sufficient basis in law and fact, and that Mr. Reavy's testimony was not sufficient;

6. Sufficient testimony concerning calculations and measurements on all aspects of the accident is necessary prior to jury's consideration of testimony of speed;

7. Decedent was entitled to presumption of having operated and exercised due care for his safety and others while driving the vehicle.

These points for charge were properly denied by the trial court and because we concur in its reasons for doing so as they appear in its opinion, we add nothing further.

The following of appellants' contentions have been waived. Appellants claim that the court instructed the jury erroneously on the damages recoverable under the Wrongful Death Act, 42 Pa.C.S.A. § 8301, insofar as the pecuniary value of a decedent's services, society and comfort to his or her family, had he or she lived, are concerned. Contrary to appellants' contention, they did not object at trial to this section of the charge. We may not consider it at this time. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). Appellants also assert that certain of

172

plaintiffs' opening remarks to the jury were intended to convey the fact of insurance to them. Appellants' objection came too late when they waited until the plaintiffs' attorney completed his opening argument. *Fretts v. Pavetti*, 282 Pa.Superior Ct. 166, 422 A.2d 881 (1980). For the same reason, appellants must be deemed to have waived their contention regarding plaintiffs' counsel's urging the jury to send a message to the community. Appellants failed to object until opposing counsel's closing was completed.

Judgment reversed and case remanded for an evidentiary hearing on delay damages. Jurisdiction relinquished.